346 F.Supp. 702 (1972)
ANHEUSER-BUSCH, INC.
v.
BREWERY DRIVERS AND HELPERS AND WAREHOUSEMEN, LOCAL NO. 133, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
No. 72 C 438(4).
United States District Court, E. D. Missouri, E. D.
August 4, 1972.
*703 Glenn L. Moller and John H. Dowell, Moller, Talent & Kuelthau, St. Louis, Mo., for plaintiff.
Jerome J. Duff, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
Plaintiff Anheuser-Busch, Inc., initiated this action by complaint filed July 20, 1972, against defendant Brewery Drivers and Helpers and Warehousemen, Local No. 133, to enjoin defendant union members from breaching certain collective bargaining agreements. The Court issued a temporary restraining order on July 20, 1972, at 12:00 noon, enjoining defendant, its members, and all persons acting in concert and participation with them, from continuing to engage in a strike, work stoppage, interruption of work or picketing at or in the vicinity of the plaintiff's St. Louis plant, in the Eastern District of Missouri. Defendant was further ordered to show cause why it should not continue to be enjoined and restrained as prayed in plaintiff's complaint.
On July 25, 1972, a hearing was held on defendant's reply to the show cause order and on defendant's motions to quash the temporary restraining order and to dismiss the complaint. The matter not being fully resolved at 2:30 p. m., July 25, 1972, the hearing was recessed until August 3, 1972, and the temporary restraining order was continued in effect until the termination of this action. During the interim period between July 25 and August 3, 1972, the parties conducted various joint meetings for the purpose of resolving this matter voluntarily and amicably. The hearing was resumed on August 3, 1972. During the course of the hearing, on July 25 and on August 3, the parties were fully heard, exhibits were received, testimony was adduced and memoranda of law were submitted. All claims of both parties for damages were dismissed without prejudice. At the close of the hearing on August 3, 1972, the matter was taken under submission by the Court.
Having heard the parties and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.
Plaintiff is a corporation duly organized and existing under the laws of the State of Missouri and is an employer in an industry affecting interstate commerce within the meaning of 29 U.S.C. § 152(3), (5), and (7). This Court has *704 jurisdiction over the subject matter of this action pursuant to 29 U.S.C. § 185.
The plaintiff and the defendant are party to two written collective bargaining agreements which were received in evidence as Plaintiff's Exhibits Nos. 1 and 2. It was stipulated by the plaintiff and the defendant during the hearing that the provisions set out in these two collective bargaining agreements were and remain in effect during all the events relevant to this action. It is a matter of dispute between the parties as to whether or not they are party to an oral agreement relating to the reduction by attrition of the plaintiff's labor force as a result of the planned modernization of plaintiff's plant. Said attrition agreement is alleged by defendant to have been executed subsequent to the written agreements mentioned above.
On Saturday, July 8, 1972, there was an employment reclassification by plaintiff of one of defendant's members, an employee assigned to plaintiff's show horse unit. On Wednesday, July 12, 1972, plaintiff laid off another show horse unit employee, also a member of the defendant organization.
Plaintiff, on July 17, 1972, met with the representatives of certain labor organizations, including the defendant, to discuss the positions of labor and management with respect to the oral attrition agreement. The plaintiff and defendant also discussed the plaintiff's actions with respect to the show horse unit employees. No resolution of these matters was reached on the 17th and the meetings were continued on July 18, 1972.
During the July 18 meetings plaintiff and defendant discussed, but again failed to resolve, the attrition and the show horse unit issues. Prior to 8:05 a. m., Wednesday, July 19, 1972, neither the plaintiff nor the defendant demanded an arbitration of these issues pursuant to their collective bargaining agreements.
At approximately 8:05 a. m. on July 19, 1972, defendant initiated a labor strike at plaintiff's St. Louis plant. Defendant informed plaintiff that the reasons for the strike were the plaintiff's actions regarding the show horse unit employees and the plaintiff's failure to properly apply the terms of the oral attrition agreement to defendant. On July 20, 1972, defendant's strike action was enjoined by the Court on plaintiff's complaint.
The sole issue before the Court in this action is whether or not defendant is prohibited from engaging in strike action, being required to submit to arbitration the issues of (a) whether or not the terms of the oral attrition agreement are applicable to the members of the defendant labor organization, (b) what the provisions of the oral attrition agreement are, and (c) whether or not plaintiff's actions with respect to the show horse unit employees were proper. For the reasons given below, the Court finds and concludes that defendant is required to submit these issues to arbitration and that defendant is prohibited from engaging in strike activity against plaintiff regarding these issues.
Section 185 of Title 29, United States Code, provides this Court with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ."
The collective bargaining agreement, described above as Plaintiff's Exhibit No. 1, was executed by plaintiff and defendant. This agreement establishes the provisions of the employment relationship between plaintiff and those members of defendant who are "show horse drivers, chauffeurs, stablemen and grooms." This agreement in Article XIII entitled "Grievance and Arbitration" provides in pertinent part as follows:

Section 1. In the event of a dispute, difference or disagreement between the employer and the union concerning the interpretation or application of the terms of this Agreement, representatives of the employer and the union shall make an honest and sincere *705 effort to adjust the same in an amicable manner. In the event, however, of the inability of the company and the union to reach an agreement on the issue or issues in dispute, the question may, at the option of either party, be submitted for arbitration in the following manner.
* * * * * *

Section 3. While the matter is pending in arbitration there shall be neither strike nor lock-out and the decisions of a majority of the Board of Arbitration shall be final and binding upon the parties. The Board of Arbitration shall not be empowered to add to, detract from or alter the terms of this Agreement in any way.
The collective bargaining agreement, which is described above as Plaintiff's Exhibit No. 2, was executed by the plaintiff as a member of the Beer Breweries and Distributors in Greater St. Louis and Vicinity, and by the defendant. Its provisions are applicable to the employment conditions of all members of the defendant labor organization. It provides in pertinent part of Article XV "Grievance and Arbitration" as follows:
Section 1.  In the event of a dispute, difference or disagreement between the Employer and the Union concerning the interpretation or application of the terms of this Agreement, representatives of the Employer and the Union shall make an honest and sincere effort to adjust the same in an amicable manner. In the event, however, of the inability of the Company and the Union to reach an agreement on the issue or issues in dispute, the question may, at the option of either party, be submitted for arbitration in the following manner;
Section 2.  Either party may demand arbitration and shall give five (5) days advance notice in writing to the other Party of its desire to arbitrate. The dispute shall be submitted to the Board of Arbitration of three (3) persons. One person shall be selected by the Union, one by the Employer, and the third by the first two. Designations of the persons selected by the Union and by the Employer must be made within ten (10) days after the demand for arbitration is made, and the two designees must select the third arbitrator within ten (10) days thereafter; provided, however, that in the event that the first two arbitrators cannot agree upon the selection of the third, then the third shall be appointed, upon request by either Party, by the then Presiding Judge of the St. Louis Court of Appeals.
Section 3.  After the matter has been referred to arbitration, and while it is pending arbitration, there shall be neither strike nor lock-out; provided, however, that if neither party demands arbitration, or if, after arbitration is demanded, the other party fails or refuses to cooperate in prompt selection of, and submission of, the dispute to the Board of Arbitration, either party preserves the right to exercise its economic power in support of its demands, and any such actions shall not be a violation of this contract, notwithstanding any other provisions of this contract.
The national labor policy is one committed to the enforcement of arbitration provisions in collective bargaining agreements. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America, A.F.L.-C.I.O. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960).
It is clear that arbitration provisions in collective bargaining agreements are to be given broad and liberal construction. Bonnot v. Congress of Independent Unions, Local #14, 331 F.2d 355 (8th Cir. 1964).
*706 The definitions of arbitrable issues, as found in section 1 of the portions of the collective bargaining agreements set out above, are identical in the breadth of their scope. The propriety of the plaintiff's actions with respect to the show horse unit employees is governed by the similar provisions of Article XXIV of Plaintiff's Exhibit No. 1 and of Article XXXII of Plaintiff's Exhibit No. 2. Both articles provide that management of the working forces
including the right to hire, suspend or discharge for proper cause, or transfer, to establish or reestablish work locations, and the right to relieve employees from duty because of lack of work or for other legitimate reasons, is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union, or be in conflict with any other clause in this contract.
The issues relevant to the oral attrition agreement, i. e. its applicability to the collective bargaining agreements between the plaintiff and the defendant, and the provisions of this oral attrition agreement, are likewise within the broad scope of arbitrable issues as defined by the subject collective bargaining agreements. See United Engineering and Foundry Employees Association Independent Union v. United Engineering and Foundry Company, 389 F.2d 479 (3rd Cir. 1967).
Defendant has argued that the arbitration of these issues is not mandatory under the provisions of these agreements. With respect to Plaintiff's Exhibit No. 1, the Court concludes that the law is clearly otherwise. The use of the word "may" does not render the grievance and arbitration provisions permissive or optional. The purpose of "may" is to allow the parties to the agreements a measure of discretion in deciding whether or not to press a claim. Bonnot, 331 F.2d at 359.
The proviso of section 3 of Article XV, Plaintiff's Exhibit No. 2, appears to qualify the "no strike, no lockout" provision of the same section. Defendant again argues that the proviso renders the arbitration provisions of the article optional and not mandatory. The Court is persuaded by plaintiff's argument to the contrary.
Construing section 3 of Article XV, Plaintiff's Exhibit No. 2, as a whole and in the context of the national labor policy favoring arbitration, this section states that there shall be no strikes or lock-outs except in two situations. The first exception exists when neither party demands arbitration because of a voluntary settlement or when one party abandons its claim. The second exists when, after arbitration is demanded by one party, the other party refuses to arbitrate or refuses to cooperate in the arbitration procedures.
The use in this section 3 of the term "economic power", instead of the reiteration of "strike or lock-out" indicates a broader scope of activity than merely "strike or lock-out." "Economic power" includes use of financial resources to seek through judicial litigation an order compelling the arbitration required by the collective bargaining agreement. The construction of these terms is consistent with the facts of, and the remedy established in, Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
The Court therefore is of the opinion that the issues upon which defendant would engage in strike activity are issues arbitrable under the applicable collective bargaining agreements, and that these agreements make the arbitration of these issues mandatory.
Defendant's actions in the initiation of the strike activity on July 19, 1972, and their effect on plaintiff indicate that plaintiff will suffer immediate and irreparable injury, loss or damage, if the defendant is not enjoined from activities designed to create a work stoppage. The plaintiff, by the relief prayed for in its complaint has established *707 that it is ready and willing to arbitrate the disputed issues under the terms of the collective bargaining agreements.
Therefore, the Court will permanently enjoin defendant from engaging in any activity to create a work stoppage over the issues relating to the oral attrition agreement and the show horse unit employees. The Court will further direct that these issues be submitted to resolution under the arbitration provisions of the collective bargaining agreements.
Defendant's motion to quash the temporary restraining order and to dismiss the complaint will be denied.