**TENNESSEE VALLEY TRADES AND LABOR COUNCIL and International Brotherhood of Electrical Workers, AFL–CIO, Plaintiffs,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

No. CIV–1–79–264.

United States District Court, E. D. Tennessee, S. D.

Feb. 15, 1980.

S. Del Fuston, Chattanooga, Tenn., Thomas X. Dunn and Richard M. Resnick, Sherman, Dunn, Cohen & Leifer, Washington, D. C., for International Brotherhood of Electrical Workers, AFL–CIO.

Joseph Jacobs, Jacobs & Langford, P. A., Atlanta, Ga., for Tennessee Valley Trades & Labor Council.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Asst. Gen. Counsel, Larry S. Bush and Brent R. Marquand, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a lawsuit in which the plaintiff labor organizations seek declaratory and injunctive relief with regard to alleged violations on the part of the defendant of a collective bargaining agreement. The plaintiffs aver that the TVA has breached

the collective bargaining agreement by unilaterally reclassifying certain positions from labor to management and by refusing to negotiate or arbitrate its action in this regard. The plaintiffs seek by this lawsuit to compel negotiation or arbitration of this reclassification action. Jurisdiction is based upon 16 U.S.C. § 831(c), 28 U.S.C. § 1331 and § 1337 and is not in dispute. The lawsuit was initially before the Court upon the plaintiffs' motion for a temporary restraining order. In response to that motion the defendant filed a motion to dismiss or, in the alternative, for summary judgment. The plaintiff thereupon filed a cross-motion for summary judgment. The case is accordingly before the Court upon these cross-motions for summary judgment.

From the pleadings, exhibits and affidavits now before the Court, the following facts are undisputed. The Tennessee Valley Authority was created pursuant to the TVA Act of 1933 (16 U.S.C. §§ 831 et seq.). Following its creation and prior to entering into any collective bargaining agreements, the TVA classified its employees in two basic categories, a salary policy schedule and a trades and labor schedule. In 1935 the TVA Board promulgated an "Employee Relationship Policy", setting out its labor relations policy and recognizing its employees' right to organize and bargain collectively (Ex. A to Pullin Affidavit). Pursuant to this policy the TVA entered into a collective bargaining agreement with a number of labor organizations acting through the plaintiff council, the Tennessee Valley Trades and Labor Council. The plaintiff, the International Brotherhood of Electrical Workers, AFL–CIO (IBEW), has at all times been a member of the Trades and Labor Council. By agreement of the parties no representational or bargaining unit elections were ever required or held. Rather, the coverage of the collective bargaining agreement was extended to the trade and labor schedules previously established by the TVA. The General Agreement between the plaintiffs and the defendant was originally negotiated under date of August 6, 1940. It was last revised under date of April 15, 1974. The Supplementary Schedules to that agreement were last revised upon March 15, 1979. The General Agreement and Supplementary Schedules as thus revised were in effect at the time this lawsuit was filed upon November 14, 1979 (See Ex. # 1 to Pl. Complaint). The present lawsuit centers upon the terms and provisions of this collective bargaining agreement as they relate to the actions of the parties hereinafter described.

By letter dated June 28, 1979, the acting manager of union-management relations for TVA requested approval by the plaintiffs of proposed action upon the part of TVA to reclassify four positions from the trades and labor schedule to the management schedule. The positions to be reclassified were shift engineer, assistant shift engineer, power system load co-ordinator and power system dispatcher. The letter concluded with a summary of the reasons for reclassifying each position (See Ex. A to Pl. Complaint).

By letter dated July 16, 1979, the plaintiff Council declined to concur in the TVA request (See Ex. B to Pl. Complaint).

By letter dated August 16, 1979, the acting director of labor relations for TVA advised the plaintiffs that the TVA Board was convinced that the four positions discussed in the previous correspondence were management positions and accordingly were improperly included within the bargaining unit. The letter then stated that effective as of November 18, 1979 the TVA would assign the positions to the management schedule and would no longer bargain concerning them. After further explaining the salary and benefits the positions would carry, the letter concluded by stating that there were no other plans to alter the essential nature of the positions (See Ex. C to Pl. Complaint).

By letter dated September 5, 1979, the plaintiff Council, after citing various provisions in the collective bargaining agreement pertaining to the functions of the Joint Classification Committee urged the TVA to submit the matter of any change in positions to that committee. If a resolution of

the proposed changes was not effected by the committee, the Council letter called for arbitration (*See* Ex. D to Pl. Complaint). No further communication appears to have occurred between the parties until this lawsuit was filed upon November 14, 1979. Thereafter, upon November 16, 1979, the plaintiff filed a motion seeking an order temporarily restraining the TVA from removing any classification of employees from the bargaining unit pending further proceedings in the lawsuit and pending resolution of the issue through contract procedures. A hearing upon the plaintiffs' motion for a temporary restraining order was held upon November 19, 1979. In the meanwhile, upon November 18, 1979, the TVA had effected on its records the change in the four positions as it had stated it would do in its letter of August 16, 1979. At the time of the hearing upon November 19, 1979, and in response to the plaintiff's motion for a temporary restraining order, the TVA filed its motion for dismissal or, in the alternative, for summary judgment. The plaintiff requested ten days to respond to this motion and within that time filed its cross-motion for summary judgment.

At the time this lawsuit was filed the plaintiff, IBEW, was the collective bargaining representative for approximately 4,058 of the approximately 10,855 employees covered by the subject collective bargaining agreement. As of November 18, 1979 a total of some 375 personnel were employed by the TVA in the positions of shift engineer, assistant shift engineer, power system load co-ordinator and power system dispatcher and were subject to the change from the trades and labor schedule to the management schedule as effected by the TVA on that date. Prior to the action of TVA herein complained of all personnel in the four positions were within the coverage of the collective bargaining agreement and were in bargaining units represented by the IBEW.

Upon three prior occasions the TVA has by unilateral action, and without dispute, transferred work or positions not previously within the trades and labor schedules to those schedules. (*See* Pullin Affidavit)

There has been no previous occasion, however, upon which work or positions have been removed from the trades and labor schedules. The subject of reclassifying one or more of the four positions here involved as management positions, rather than trades and labor positions, has been the subject of negotiations between the parties upon prior occasions over the past ten or more years, but these negotiations resulted in no alteration in the classification of the positions. (*See* Affidavit of Lewis)

Voluminous exhibits have been filed by the TVA in justification of its decision to reclassify the subject positions as management positions. As the matters in issue in this lawsuit relate to alleged procedural breaches of the subject collective bargaining agreement, and not to the merits or demerits of the reclassifications themselves, it becomes unnecessary for the Court to recite the substance of these exhibits.

The collective bargaining agreement contains the following provisions that are relevant to the contentions herein being asserted by the respective parties:

GENERAL AGREEMENT BETWEEN THE TENNESSEE VALLEY AUTHORITY AND THE TENNESSEE VALLEY TRADES AND LABOR COUNCIL

\* \* \* \* \* \*

I. *Parties to Agreement and Signatory Unions*

This is an agreement between the Tennessee Valley Authority and employees of TVA in trades and labor classifications as represented by the unions listed below. These unions, acting through the Tennessee Valley Trades and Labor Council, are recognized as the accredited representatives of these employees.

This agreement shall apply to all TVA employees in the trades and labor classifications who are members or eligible to be members, or who perform the same type of work as members, in any one of the following organizations comprising the Council:

\* \* \* \* \* \*

International Brotherhood of Electrical Workers

\* \* \* \* \* \*

II. *Responsibility for Following Procedures of Agreement*

1. The parties recognize that TVA is an agency of and is accountable to, the Government of the United States of America. Therefore TVA must operate within the limits of its legally delegated authority and responsibility.

2. . . . TVA and the Council hereby agree to set up procedures to determine . . .; adjustment of disputes and grievances; . . . .

3. TVA, on behalf of all management representatives, and the Council and its member organizations, on behalf of their members, accept responsibility to follow the procedure set forth in this agreement for the settlement of all issues and disputes. The Council and its member organizations will not permit their members to engage in work stoppages or to refuse to perform work as assigned, nor sanction their leaving the service, pending settlement of issues and disputes. TVA will not change the conditions set forth in this agreement except by methods provided herein.

\* \* \* \* \* \*

IV. *Determination of Appropriate Bargaining Unit*

\* \* \* \* \* \*

2. If a dispute should arise as to the employees who constitute an appropriate unit . . ., the Manager of Union-Management Relations of TVA shall investigate such dispute and attempt to adjust it on its merits. . . Should the Manager of Union-Management Relations be unable to adjust a dispute under this article, either party may invoke the services of an arbitrator secured through the Federal Mediation and Conciliation Service whose recommendation shall be accepted by all parties to the dispute.

\* \* \* \* \* \*

VII. *Grievance Adjustment Procedure*

The procedure for adjusting grievances shall provide the employee with full opportunity for the presentation of his grievance and for the participation of union representatives. Provision shall also be made for appeal from the final decision of TVA to an impartial referee.

VIII. *Determination of Wage Rates and Classification Matters*

\* \* \* \* \* \*

3. A continuing Joint Classification Committee handles matters relating to the classification of trades and labor positions. The committee considers and decides matters involving basic classification and related qualification standards affecting trades and labor positions. Actions taken by the committee are final on approval of the Manager of Union-Management Relations and the President of the Council.

\* \* \* \* \* \*

XIV. *Procedure for Revising Supplementary Schedules, Including Mediation and Voluntary Arbitration*

1. . . . negotiated understandings established under this agreement shall be in the form of Supplementary Schedules attached hereto. Such schedules relating to matters other than the determination of rates of pay may be amended in joint conference called upon 30 days' notice of either party by the other after they have been in effect for one year. If, however, agreement in such joint conference is not reached, either party may invoke the services of a mediator. The mediator shall be the joint selection of both parties from a panel of five suitable persons previously agreed to by the Council and TVA. . . . A mediator so selected shall use his best efforts by mediation to bring the parties to an agreement. If such efforts to bring about an amicable settlement through mediation are unsuccessful, the said mediator shall at once endeavor to induce the Council and TVA to submit their controversy to arbitration.

2. If arbitration is agreed to, the parties shall each appoint an arbitrator, and the third arbitrator shall be designated by the mediator. The decision of a majority of said arbitrators shall be final and binding on both parties. . . . If arbitration, after being proposed by the mediator or by either party, is not accepted within 10 days, the mediator shall notify both the Council and TVA to that effect, and no modification or termination of any provision of any of these schedules shall be made by either party for a period of 30 days from expiration of said 10-day period.

XV. *Signatures Making Agreement Effective*

1. This agreement became fully binding upon TVA, the Council, the separate members unions of the Council, . . . when signed . . . .. This revision of the agreement shall continue in effect for one year and shall be self-renewed thereafter, except that after one year it may be reopened at any time by TVA or by the Council in joint conference called upon 90 days' notice of either party to the other.

\*　　\*　　\*　　\*　　\*　　\*

SUPPLEMENTARY SCHEDULES

\*　　\*　　\*　　\*　　\*　　\*

A–1. *Wage Schedules and Classification of Trades and Labor Positions*

\*　　\*　　\*　　\*　　\*　　\*

B. *Joint Classification Committee*

1. A continuing Joint Classification Committee handles matters relating to the classification of trades and labor positions. The committee is composed of four representatives and four alternates of the Council, appointed by the President of the Council, and four representatives and four alternates of TVA, appointed by the Manager of Union-Management Relations. . . .

\*　　\*　　\*　　\*　　\*　　\*

3. The functions of the committee include:

a. Approval of requested classification changes in the .wage schedules, such as establishment or elimination of classes, changes in titles, and in relative level of a class.

\*　　\*　　\*　　\*　　\*　　·\*

4. The functions described above shall not include the following:

a. The application of scheduled classes to individual positions. This function is administrative and is handled through the machinery established for this purpose.

\*　　\*　　\*　　\*　　\*　　\*

c. Grievances concerning classification matters. Such grievances are handled through the regular grievance procedure.

\*　　\*　　\*　　\*　　\*　　\*

A–IX. *Grievance Adjustment Procedure*

A. *What Constitutes a Grievance?*

1. If an employee believes he has been treated unfairly or if he disagrees with his supervisors as to the application of a policy to him as an employee, he may file a grievance. He may only do this personally or through the authorized representative of the union which is recognized as his accredited representative.

2. An employee is not permitted to file a grievance for the purpose of getting an established policy, standard, or procedure changed. Such changes may be made only through negotiations between management and employee organizations. If the employee's complaint is against a policy, standard, or procedure, he must take up the matter with his Council representative.

\*　　\*　　\*　　\*　　\*　　\*

C. *Basic Procedure for Handling Grievances*

1. Discussion with immediate supervisor—

\*　　\*　　\*　　\*　　\*　　\*

2. Appeal to the director of the division—

\*　　\*　　\*　　\*　　\*　　\*

3. Appeal to the Manager of Union-Management Relations—

\* \* \* \* \* \*

4. Appeal to impartial referee—If the Council is not satisfied with this decision, it may submit the dispute to an impartial referee who is selected from a panel of five suitable persons previously designated jointly by TVA and the Council.

\* \* \* \* \* \*

The decision of the referee is accepted by both parties as final. . . .

\* \* \* \* \* \*

Upon the basis of the foregoing record, the plaintiffs contend that the TVA is prohibited under the terms of the collective bargaining contract from unilaterally reclassifying the four positions here involved from trades and labor positions to management positions and thereby removing the positions from the coverage of the agreement. On the contrary, the plaintiffs contend that the TVA is obligated under the agreement to submit the matter to the Joint Classification Committee. In event that Committee should be unable to resolve the matters in issue, mediation or arbitration is then required.

The TVA upon the other hand contends that the collective bargaining agreement contains no contractual provisions or procedures for negotiating or arbitrating the issue of when positions cease to be trades and labor positions and become management positions. Rather, the TVA contends that the making of this decision is a non-delegable statutory duty imposed upon the TVA Board.[1]

Turning first to the last stated contention, namely the contention of TVA that it has a non-delegable statutory duty under its legislative charter to classify its personnel and determine its management staff, it is the TVA position that its function in this regard is legislatively mandated by Section 3 of the TVA Act [16 U.S.C. § 831b (1976)]. It is the further position of the TVA that Article II, Section 1 of the Agreement specifically recognizes this legislative mandate. Section 3 of the TVA Act provides in relevant part:

> "The [TVA] Board shall . . . appoint such managers, assistant managers, officers, employees, attorneys, and agents as are necessary for the transaction of its business, . . . define their duties, and provide a system of organization to fix responsibility and promote efficiency." [16 U.S.C. § 831b (1976)]

Article II, Section 1 of the Agreement provides in relevant part:

> "The parties recognize that TVA is an agency of, and is accountable to, the Government of the United States of America. Therefore TVA must operate within the limits of its legally delegated authority and responsibility."

Acting pursuant to the foregoing legislative authority, the TVA has now for more than 40 years elected to "appoint" its "employees" by means of collective bargaining agreements. Other contractual arrangements have been entered into for the appointment of other staff personnel. Nothing in Section 3 of the TVA Act would appear to either mandate or prohibit the particular form of contractual arrangement by which the TVA appoints either its management staff or its employees. Neither is there anything in the section that renders such employment contracts invalid once they are validly entered into. Nor does the section render such contracts terminable at

---

1. A passing reference is made in the TVA brief to a contention that the collective bargaining agreement is terminable at will. Presumably this reference seeks to authenticate the TVA decision here in issue by asserting a partial termination of the agreement. No termination in whole is asserted. Suffice it to say that the Court is of the opinion that the contention is without merit. The agreement provides for annual self renewal with provision for reopening upon 90 days' notice (*See* Article IV, Section 1 of the Agreement). Not only was the TVA reclassification action here taken not a reopening notice, but even were it to be so considered, it would not of itself have effected a termination of the negotiation or settlement procedures provided within the agreement. *See Chattanooga Mailers Union v. Chattanooga News Free Press*, 524 F.2d 1305 (6th Cir. 1975).

the option of the TVA and apart from their terms. The Court is of the opinion that the contentions of the TVA in this regard are without merit.

Before proceeding to a consideration of the conflicting contentions of the parties with regard to whether the unilateral reclassification action taken by the TVA was permissible or impermissible under the terms of the collective bargaining agreement, it is appropriate that the Court should establish the legal guidelines which must govern its decision in this regard. Although the TVA, as a governmental agency, is not within the coverage of the National Labor Relations Act, see 29 U.S.C. § 152(2), the basic principles of federal labor law that have devolved under that Act may appropriately provide the guidelines for resolving the instant dispute. In accordance with the federal labor policy, the TVA recognized the right of its employees to organize and engage in collective bargaining as far back as 1935 when it first adopted its statement of employment policy (See Ex. A to the Pullin Affidavit) In fact, that policy so closely tracked the national labor policy as enunciated in the National Labor Relations Act as to provide that in event of a dispute regarding representation "either party shall be free to invoke the services of the National Labor Relations Board" (¶ # 6).

The basic guidelines for the direction of this Court in the performance of its function in this collective bargaining dispute are set forth in the trilogy of cases sometimes referred to as the "Steelworkers' Trilogy". In the case of *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court had the following to say:

".  .  ." arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry .  .  . must be strictly confined to the question whether the reluctant party did agree to arbitrate  .  .  .."

"An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

\* \* \* \* \* \*

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail .  .  ."

In *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the role of the court in a collective bargaining dispute was further defined as follows:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the parties seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances, the moving party should not be deprived of the arbitrator's judgment when it was his judgment and all that it connotes that was bargained for."

Thus, it may be said in summary that whether the TVA is bound to either negotiate or otherwise arbitrate the present dispute under the provisions of the collective bargaining agreement now before the Court is a matter to be determined on the basis of the terms and provisions of that agreement. Where arbitration is agreed upon an order to arbitrate the dispute should not be denied unless the Court can say with assurance that the arbitration clause is not susceptible of an interpretation that covers the matter in dispute. The merits of the dispute, if subject to arbitration, do not come within the Court's purview. *See Chambers v. Beaunit Corp.*, 404 F.2d 128 (6th Cir. 1968).

■ Turning to the relevant portions of the collective bargaining agreement as hereinabove set forth, it is apparent that in three separate portions or sections of the agreement provisions are made relating to arbitration. Although Article II of the agreement makes general reference to the setting up of "procedures to determine . . adjustment of disputes and grievances" and to the commitment of TVA "not to change the conditions set forth in this Agreement except by methods provided herein", the first reference to a dispute procedure culminating in arbitration is contained in Article IV, Section 2 of the agreement. There it is provided that

"if a dispute should arise as to the employees who constitute an appropriate (bargaining) unit, either party may invoke the services of an arbitrator . . whose recommendation shall be accepted by all parties to the dispute".

With reference to the foregoing provisions, it should be noted initially that the use of the words "may invoke . . . (arbitration)" present no impediment to the judicial mandating of such a procedure. As stated in the case of *Anheuser-Busch, Inc. v. Brewery Drivers*, 346 F.Supp. 702 (E.D.Mo. 1972):

"The use of the word 'may' does not render the grievance and arbitration provisions permissive or optional. The purpose of 'may' is to allow the parties to the agreement a measure of discretion in deciding whether or not to press a claim."

The impediment to reliance upon Article IV, Section 2, as a basis for mandatory arbitration is that the present dispute does not involve the appropriateness of a bargaining unit. Rather, it involves the reclassification to a management schedule of employees from within an established bargaining unit.

■ The second reference in the subject collective bargaining agreement to a disputes procedure culminating in arbitration is contained in Article XIV, Sections 1 and 2. There it is provided that:

". . . negotiated understandings . . . shall be in the form of Supplementary Schedules . . . if agreement . . . (on such schedules) . . is not reached, either party may invoke . . . a mediator . . . if settlement through mediation (is) unsuccessful, the mediator shall endeavor to induce . . . arbitration. (2) If arbitration is agreed to . . . the decision . . shall be final and binding on both parties."

Apart from whether the present dispute involves the negotiation of a "Supplementary Schedule", the foregoing recitation of the relevant provisions of Article XIV, Sections 1 and 2, renders it readily apparent that compulsory arbitration is not provided for therein. Rather, arbitration with regard to the adoption of Supplementary Schedules requires mutual assent to such a procedure.

The final reference in the subject collective bargaining agreement to a disputes procedure culminating in arbitration is contained in the Supplementary Schedules. In Schedule A–I it is provided that:

"B(1) A continuing Joint Classification Committee handles matters relating to the classification of trades and labor positions. . . . (3) The functions of the committee include: (a) . . . elimination of classes . . . (4)(c) grievances concerning classification matters . . . are handled through the regular grievance procedure."

In Schedule A–IX it is provided that:

"A(1) If an employee . . . disagrees . . . as to the application of a policy to him . . . he may file a grievance . . . through . . . the union . . . (2) An employee is not permitted to file a grievance for the purpose of getting an established policy . . . changed . . . ."

"B(1) An employee first takes up his grievance with the supervisor . . . (2) If the employee does not accept the decision of the supervisor he may appeal to the director of the division . . . . (3) If the employee does not accept the decision of the director of the division, he

may appeal to the manager . . . . . (4) If the Council is not satisfied with this decision, it may submit the dispute to an impartial referee . . . . The decision of the referee is accepted by both parties as final. . . ."

While the foregoing provisions taken from the Supplementary Schedules of the collective bargaining agreement are not without ambiguity as they relate to the procedure for the settlement of classification disputes, that is not the basis of the initial attack made upon them by the TVA. Rather, it is the contention of the TVA that the functions of the Joint Classification Committee and the provisions for settlement of classification disputes are both irrelevant and inapplicable to the matters here in dispute. It is the contention of the TVA in this regard that the functions of the Joint Classification Committee, as defined in subparagraph B(1) of the Supplementary Schedule A–I, are limited to "classification of trades and labor positions" and does not extend to the reclassification of former trades and labor positions to management positions. That is to say it is the contention of the TVA that the functions of the Joint Classification Committee are limited to classification matters *within* the trades and labor positions, and do not extend to reclassification *from* trades and labor positions. The argument of the TVA in this regard appears to the Court to be tenuous—too tenuous to constitute "forceful evidence of a purpose to exclude the claim from arbitration" or to give "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" as required in *United Steelworkers v. Warrior & Gulf Navigation Co., supra.*

■ As regards the matter of ambiguity, there does exist some lack of clarity between the statement of the functions of the Joint Classification Committee as set forth in subparagraph B(3)(a) and the statement of the exclusions from those functions as set forth in subparagraph B(4)(a) of Supple-

mentary Schedule A–I. There likewise is a lack of clarity in the agreement between the statement in subparagraph B(4)(c) of Supplementary Schedule A–I wherein it is provided that grievances concerning classification matters shall be handled through the regular grievance procedure and the definition of grievances as stated in subparagraph A(1) and (2) of Supplementary Schedule A–IX. But neither of these ambiguities is sufficient to overcome the "positive assurance" and "forceful evidence rules" rules enunciated in the *United Steelworkers v. Warrior & Gulf Navigation Co., supra.* Rather, they are themselves appropriate matters to be resolved by the arbitrator.

■ The Court accordingly concludes that under the provisions of Supplementary Schedules A–I and A–IX the plaintiffs are entitled to require that the TVA submit to arbitration all matters relating to the reclassification of the positions of shift engineer, assistant shift engineer, power systems load co-ordinator and power systems dispatcher from trades and labor positions to management positions. Pending the outcome of such arbitration the current status of the positions shall be maintained, the Court being of the opinion that a balancing of the equities in the case does not favor the shifting and re-shifting of the positions prior to arbitration. Rather, the matter of any further shifting of the positions should await the outcome of the arbitration.

An order will enter in accordance with this memorandum.