Edward C. HESTER, Plaintiff,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, et al., Defendants.

Civ. A. No. 84–AR–5791–NW.

United States District Court, N.D. Alabama, Northwestern Division.

June 26, 1990.

See also 742 F.Supp. 1522.

C.V. Stelzenmuller, Burr & Forman, Birmingham, Ala., for plaintiff.

Thomas N. Crawford, Jr., Cooper Mitch Crawford, Kuykendall & Whatley, Birmingham, Ala., Richard Griffin, Michael Fanning, International Union of Operating Engineers, Washington, D.C., Joseph Jacobs, James T. Langford, Atlanta, Ga., Donald R. Rhea, Rhea Boyd & Rhea, Gadsden, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has before it the motion of plaintiff, Edward C. Hester, for leave to amend his complaint to add a Fifth Claim. This motion was filed some five years after the original complaint was filed on November 9, 1984. Although defendant, Local 320, is not a target of this proposed Fifth Claim, Local 320 nevertheless joins the other two defendants, International Union of Operating Engineers, AFL–CIO, and Local 660, in opposing the allowance of the proposed amendment.[1]

---

1. The current viability of Hester's First Claim, Second Claim, Third Claim and Fourth Claim will not be matters for consideration unless and until challenged by renewed motions for summary judgment.

### The Facts and Procedural Posture

Because a 1987 opinion by the Eleventh Circuit in this case clearly and succinctly states the basic facts and plaintiff's theories of liability, this court adopts the introductory paragraphs of that opinion as its starting point.[2]

There are procedural facts not contained in the opinion of the Eleventh Circuit set forth in footnote 2 below which are pertinent to the question now under consideration. They must be outlined briefly.

First, on February 19, 1985, after all three defendants had answered the original complaint which then contained three separate claims or theories of liability, the court entered a scheduling order pursuant to Rule 16(b), F.R.Civ.P. *Inter alia*, that order provided:

> If an attorney or party has any objection to, or suggested modification of, the indicated scheduled, he, she or it should file a notice within 15 days from the date hereof with the Clerk setting forth such objection or suggestion. If no such notice is filed, the following maximum time limits shall apply:
>
> (1) All motions to join additional parties and to amend the pleading *must* be filed within 50 days after the entry of this Order.

(emphasis in original).

Second, after a formal pre-trial conference was held more than 50 days after the said Rule 16(b) order, the court, on August 26, 1985, entered what it then considered to be the final pre-trial order. At the pre-trial conference, the proposed pre-trial order, as submitted by Hester, was supplemented in the court's own handwriting to acknowledge that Hester orally requested the right to add a pendent state claim as his Fourth Claim. Over defendants' objection, the court, on September 5, 1985, granted Hester's motion for leave to amend to add the following Fourth Claim:

> On September 15, 1983, Local 660 initiated disciplinary proceedings against Hester for working within its jurisdiction without its consent. On November 8, 1983, Hester was found guilty in a Local 660 trial and was fined $3,000. Two days later, Hester appealed his fine to IUOE, which "waived" the fine pending the outcome of his appeal. On August 6, 1984, IUOE denied Hester's appeal but reduced his fine from $3,000 to $500. Local 320 then wrote a letter on September 5, 1984 to Hester explaining that IUOE's constitution would not permit it to accept his membership dues until he paid the $500 fine.
>
> On November 7, 1984, Hester filed suit in the district court against IUOE, Local 320 and Local 660. He alleged three causes of action: (1) the fine that IUOE and Local 660 imposed, and Local 320's refusal to accept his dues, were disciplinary actions in violation of the safeguards against improper disciplinary action provided by the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5) (1982); (2) IUOE breached its duty of fair representation when it affirmed a fine against Hester for exercising his right, under IUOE's collective bargaining agreement with TVA, to receive preference as a veteran; (3) Local 660 violated that collective bargaining agreement when it did not honor the veterans' preference provision. Hester later amended his complaint to add a pendent state law claim based on Alabama contract law.
>
> *Hester v. Intern. Union of Operating Engineers,* 818 F.2d 1537 at 1538, 1539 (11th Cir.1987) (footnotes omitted).

---

**2.** Edward C. Hester is a member of the International Union of Operating Engineers (IUOE) and its Local 320. He is a crane operator. Local 320 represents Hester and other heavy equipment operators engaged in construction work for employers in northern Alabama, including the Tennessee Valley Authority (TVA), a corporation wholly owned by the federal government.

Appointments to union jobs with TVA are restricted in two relevant ways. First, IUOE's collective bargaining agreement with TVA contains a provision giving preference in hiring decisions to veterans over non-veterans, and to disabled veterans over non-disabled veterans. Second, IUOE's constitution prohibits a member of one local from working within the jurisdiction of another local without the latter local's consent.

Hester was employed by TVA at its Yellow Creek facility in Iuka, Mississippi, which is within Local 320's jurisdiction. In the summer of 1983, TVA began laying off workers, including Hester, who was replaced by a disabled veteran. Hester, a non-disabled veteran, then asked TVA to place his name on its veterans' preferential hiring list.

Soon thereafter, in August of 1983, TVA needed a crane operator at its Brown's Ferry site in Athens, Alabama, which is in the jurisdiction of another Local, Local 660. Local 660 referred a non-veteran to TVA from its hiring hall. TVA rejected that candidate and, pursuant to the collective bargaining agreement, looked to the veterans' preferential hiring list. TVA hired Hester.

### Fourth Claim

Plaintiff repeats and realleges each and every averment of fact ... contained in paragraphs 1 through 16, inclusive, of the complaint. Plaintiff avers that these facts constitute a cause of action under Alabama law, and that this Court has pendant [sic] jurisdiction to adjudicate the same. *Allen v. Theatrical Workers,* 338 F.2d 309 (5th Cir.1964). Federal law does not preempt, but expressly preserves all rights and remedies under State law relating to union disciplinary proceedings. 29 U.S.C. § 413.

Plaintiff realleges the prayer for relief in the original complaint.

The Eleventh Circuit characterized this Fourth Claim as "a pendent state claim based on Alabama contract law." 818 F.2d at 1539. This court is not sure whether the Fourth Claim is *ex contractu* or *ex delicto.* Consistent with the granting of Hester's motion for leave to add a Fourth Claim, the court amended the pre-trial order to supplement plaintiff's "statement-of-position."

Third, because this court granted defendants' motions for summary judgment after the entry of the pre-trial order of August 26, 1985, the case not proceed to trial on the issues as set forth in the pre-trial order and, instead, proceeded to the Eleventh Circuit (and ultimately to the Supreme Court) on Hester's appeal. The appellate process did not result in a final appellate mandate until October 26, 1989.

Fourth, on December 19, 1989, Hester filed his present motion for leave to amend, and on May 9, 1990, he amended the motion. The amended motion seeks to add a Fifth Claim against Local 660 and IUOE "based on the provisions of § 3 of the Tennessee Valley Authority Act, 11 U.S.A. [sic] § 8316, and the said collective bargaining agreement entered into pursuant to that statute, which gives rise to a duty of fair representation, ...." Among the authorities cited in support of this Fifth Claim, Hester cites *Bowman v. Tennessee Valley Authority,* 744 F.2d 1207 (6th Cir. 1984), *Allen v. International Alliance of Theatrical, etc.,* 338 F.2d 309 (5th Cir. 1964), *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), and 160 A.L.R. 916. All of these authorities, and the TVA Act itself, were available to Hester when he filed his original complaint on November 7, 1984, when the original Rule 16(b) scheduling order was entered on February 16, 1985, and when the pre-trial order was entered on August 26, 1985. In fact, in his original complaint, Hester invoked § 3 of the TVA act. Undoubtedly recognizing the problem he now faces, Hester avers that his proposed Fifth Claim is also based on *Breininger v. Sheet Metal Workers Local No. 6,* —— U.S. ——, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), which was decided on December 5, 1989, shortly after the issuance of the final mandate from the Eleventh Circuit. *Inter alia,* the proposed Fifth Claim seeks punitive damages of $100,000 from IUOE and Local 660 for their alleged willful and oppressive conduct and bad faith, $30,000 for plaintiff's alleged mental suffering and humiliation, and $50,000 for attorney's fees.

### The Law–of–the–Case

The Eleventh Circuit is not perfectly clear to this court in everything it has said in this case, but it was perfectly clear in its holding in 1987 when it unequivocally said, "We *affirm* on other grounds the district court's *dismissal* of Hester's breach of duty of fair representation claim [the Second Claim]...." *Hester v. Intern. Union of Operating Engineers,* 830 F.2d 172, 176 (11th Cir.1987) (emphasis supplied). There was no dissent from this explicit holding, which was contained in a clarification of the earlier Eleventh Circuit opinion found at 818 F.2d 1537, *et seq.* It is true, of course, that the Supreme Court at 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989), vacated the Eleventh Circuit opinions at 818 F.2d 1537 and 830 F.2d 172 for reconsideration in light of *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). Upon reconsideration, however, the Eleventh Circuit reaffirmed those parts of its earlier opinions here pertinent. *Hester v. Intern. Union of Operating Engineers,* 878 F.2d 1309 (11th Cir.1989). The rationale of the Eleventh Circuit in affirming the dismissal of Hester's claim of a breach of the duty of fair representation against his unions is not important. What *is* im-

portant is the fact that Hester's Second Claim was *dismissed* by this court, and that the said dismissal was *affirmed* by the Eleventh Circuit. Hester's loss on this particular theory of liability thereupon became the *law-of-the-case,* a doctrine based on the premise that an appellate decision is binding in all subsequent proceedings in the same case unless an intervening change in the law takes place or new evidence dictates a different result. *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1510 (11th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). In other words, on remand, an issue adjudicated by an appellate court cannot be resurrected in the trial court, except in a very narrow set of circumstances, none of which exist here.

■ Hester's proposed Fifth Claim is obviously designed to meet the Eleventh Circuit's criticisms of his original Second Claim, which alleged a breach of the duty of fair representation. If the Eleventh Circuit had intended to permit Hester, on remand, to take another stab at stating and proving a claim for breach of the duty of fair representation, it surely would have said so. Not only did the Eleventh Circuit not give any such hint, but its rendition of the largely undisputed pertinent facts makes it abundantly clear that it did not see any way that Hester could successfully characterize what his unions had done or had failed to do to him as "arbitrary, capricious or in bad faith." Nevertheless, this is exactly what Hester is now attempting to do. In his proposed Fifth Claim, he is simply describing what two unions did or failed to do as "arbitrary, capricious or in bad faith," and then dressing this legal conclusion up with one or two pieces of factual window dressing which were known to him from the beginning. In his brief in support of his present motion for leave to add a Fifth Claim, Hester says the Eleventh Circuit found his Second Claim "defective because it did not use the talismanic words 'arbitrary,' 'capricious' or 'in bad faith' in describing the defendants' conduct." Plaintiff's brief, p. 4. Hester then went even further and said: "The Court of Appeals overlooked quite a bit of evidence in the record...." Plaintiff's brief, p. 4, n.

1. These are inaccurate descriptions of the Eleventh Circuit's opinion, which held that "Hester has not alleged sufficient *facts* to establish that the IUOE's challenged *conduct* was arbitrary, discriminatory, or in bad faith." (emphasis supplied) 830 F.2d at 175. The Eleventh Circuit was interested in the actual union conduct of which Hester complained. The Eleventh Circuit held that the union's conduct, as a matter of law, did not add up to proscribed conduct.

If this court had initially granted leave to amend when it dismissed Hester's Second Claim, that leave would have survived a present application of the law-of-the-case doctrine, but the dismissal was in response to defendants' motions for summary judgment and was *final* and appealable, as proven by the fact that an appeal was taken by Hester. Although the order of dismissal entered on October 15, 1985, was without prejudice, it nowhere suggested a right to amend. Thus, when the Eleventh Circuit affirmed this dismissal without expressly recognizing an opportunity to amend, Hester's claim for unfair representation was foreclosed by an application of the law-of-the-case. That bar cannot be circumvented by the expedient of adding a substitute claim. The order of the Eleventh Circuit precludes any attempt to revive such a claim, whether by a proposed amendment to the particular numbered claim which was dismissed, or by adding a new claim attempting to do indirectly what cannot be done directly.

*Breininger, supra,* provides no way around the law-of-the-case. Even if *Breininger* itself had been available to Hester when his original complaint was drafted, it would not have helped him to avoid the adverse result he obtained in the Eleventh Circuit. There is nothing in *Breininger* materially inconsistent with what the Eleventh Circuit said on October 20, 1987, in *Hester.* Furthermore, *Breininger* only contains the Supreme Court's recognition of the law as it existed when Hester filed his complaint. It certainly cannot be construed as a sudden recognition by the Supreme Court of some new implied cause of action or innovative theory of liability

against labor unions under § 3 of the TVA Act.

### Rule 16, F.R.Civ.P.

■ Assuming *arguendo* that Hester's proposed Fifth Claim is not barred by the law-of-the-case, it nevertheless will not be allowed in an exercise of this court's discretion in such matters. After the original Eleventh Circuit opinion of October 20, 1987, and before any stay was entered by this court, this court held a status conference on January 11, 1988, and again set the case for trial on May 31, 1988. On February 19, 1988, this court overruled defendants' then renewed motions for summary judgment. On February 12, 1988, this court had reopened discovery for the limited purpose of allowing IUOE to take Hester's deposition, a deposition which could not have been designed to seek information from Hester bearing on his proposed Fifth Claim, that is, unless the Fifth Claim is the Second Claim dressed in new clothes. In fact, this is exactly what the proposed Fifth Claim is, namely, a revision or a rehash of the failed Second Claim. In his brief, Hester even frankly concedes that his Fifth Claim, if allowed, will constitute a substitute for his former Second Claim.

It was not until March 3, 1988, that this court stayed the proceeding pending a petition for writ of certiorari filed with the Supreme Court by Local 660. In other words, there was nothing between October 20, 1987, and March 3, 1988, to prevent Hester from filing his present motion for leave to amend, *except* the scheduling order and the pre-trial order, both entered pursuant to Rule 16, F.R.Civ.P. (and, of course, *except* for the absence of *Breininger* already discussed, *supra*). Rule 16(b) provides, *inter alia:*

> Except in categories of actions exempted by district court rule as inappropriate, the judge, or a magistrate when authorized by district court rule, shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, the judge ... shall ... enter a scheduling order that limits the time

> (1) to join other parties *and to amend the pleadings.*
>
> *   *   *   *   *   *
>
> A schedule shall not be modified except by leave of the judge or a magistrate when authorized by district court rule relying *upon a showing of good cause.*

(emphasis supplied).

Rule 16(e) provides, *inter alia:*

> After any conference held pursuant to this rule [pretrial conference], an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. *The order following a final pre-trial conference shall be modified only to prevent manifest injustice.*

(emphasis supplied).

If, by allowing Hester to amend in 1985 to add a pendent state claim, this court encouraged Hester to believe that Rules 16(b) and 16(e) are unimportant, this court apologizes. At the time the addition of the Fourth Claim was allowed, the final pre-trial order was being entered, and the court thought Hester had shown the "good cause" required by Rule 16(b).

Not only has Hester not sought a modification of the Rule 16(b) scheduling order, or of the Rule 16(e) pre-trial order, as an accompaniment to his present motion for leave to amend, but even if such a modification were sought, it would be impossible for this court to find that a modification of the pre-trial order this long after it was entered, and long after the Rule 16(b) discovery cutoff, is necessary "to prevent manifest injustice." In fact, to now allow Hester to amend would be more likely to *cause* manifest injustice than to prevent it.

### Could Damages for Mental Anguish, Punitive Damages and Attorney's Fees Be Recoverable Under the Fifth Claim?

Hester's proposed Fifth Claim seeks $30,000 for mental suffering, $100,000 in punitive damages, and $50,000 in attorney's fees as additional punishment under the rationale of *Hall v. Cole, supra*. Even if the amendment in other respects were allowed, this court could not permit these

**1522**

elements of recovery under any theory of § 3 of the TVA Act and the collective bargaining agreement. This complication in the Fifth Claim is another reason for not allowing it to be filed.

Other Arguments by Defendants

■ IUOE offers several other arguments in opposition to Hester's suggested amendment. Local 660 does not join in three of them. All are in the nature of attacks on the Fifth Claim under Rule 12(b)(6) and/or Rule 56 as if the amendment had been allowed and as if a motion to dismiss or a motion for summary judgment had been filed. It is, of course, legitimate to oppose a proposed amendment on the ground that it would not be viable if allowed. However, the court sees no need to address IUOE's following three alternative arguments:

1. That *Bowman* and *Breininger* are distinguishable in that in *Bowman,* the union *stipulated* that it owed a duty of fair representation, whereas IUOE denies vehemently that it owed any such duty to Hester.

2. That TVA, the employer, is an indispensable party.

3. That the *DelCostello* 6–month statute of limitations would apply to the Fifth Claim and bar the claim.

The court is reminded that the Eleventh Circuit expressly did "not reach ... the question of whether section 3 of the TVA Act implies a cause of action for breach of a union's duty of fair representation." 830 F.2d at 174. While this court doubts that the cause of action contemplated by the Second Claim and the would-be Fifth Claim is implied by § 3 of the TVA Act, the court need not decide the issue any more than the Eleventh Circuit needed to decide it.

Conclusion

Because the proposed amendment is precluded both by the law-of-the-case and by Rule 16, Hester's amended motion for leave to amend to add a Fifth Claim will be denied by separate order.