**Edward C. HESTER, Plaintiff,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, et al., Defendants.**

**Civ. A. No. 84–AR–5791–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

Aug. 10, 1990.

C.V. Stelzenmuller, Burr & Forman, Birmingham, Ala., for plaintiff.

Thomas N. Crawford, Jr., Cooper Mitch Crawford Kuykendall & Whatley, Birmingham, Ala., Richard Griffin, Michael Fanning, International Union of Operating Engineers, Washington, D.C., Joseph Jacobs, James T. Langford, Atlanta, Ga., Donald R.

Rhea, Rhea Boyd & Rhea, Gadsden, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

Defendants, International Union of Operating Engineers, AFL–CIO and its Local 660 renewed their motions for summary judgment after the mandate of the Eleventh Circuit was issued on October 26, 1989, and after this court's opinion of June 27, 1990, 742 F.Supp. 1517, which denied the motion of plaintiff, Edward C. Hester, for leave to amend his complaint to add a Fifth Claim. These motions again challenge Hester's First Claim, Second Claim, Third Claim and Fourth Claim. Defendant Local 320 renewed its motion for summary judgment, accompanying it with an uncontradicted affidavit outlining an agreement between Hester and Local 320 by the terms of which Local 320 can sit on the sidelines and not only not be bound except to a very limited extent by the result as between Hester and the other two defendants but not be liable for damages or attorney's fees. The court will separately discuss the viability of each of Hester's four claims in view of what has been said and done since this court considered earlier motions for summary judgment addressed to these same four claims. The claims will be discussed in an order which makes sense to the court. In opposing these new motions for summary judgment, Hester describes the case as convoluted. This is the understatement of all time.

### Second Claim

On October 15, 1985, this court dismissed all four of Hester's claims. Upon an appeal by Hester, the Eleventh Circuit affirmed this court's dismissal of Hester's Second Claim, which had alleged a breach of the duty of fair representation and was aimed only at IUOE and Local 660. The Eleventh Circuit held that this court was correct in dismissing this claim, but for the wrong reason. By happy coincidence, this court thoroughly agrees with the Eleventh Circuit, both that this court's rationale for dismissing the Second Claim on October 15, 1985, was incorrect and that the Eleventh Circuit's substitute rationale for dismissing this claim is correct. The Eleventh Circuit's ruling explains Hester's recent effort to amend his complaint to substitute a Fifth Claim for his Second Claim, an attempt which was unsuccessful. *See* 742 F.Supp. 1517. Not only did this court necessarily indirectly reject the Second Claim in its opinion of June 27, 1990, but the court had already dealt directly with the Second Claim on February 19, 1988, after the first mandate had been received from the Eleventh Circuit.[1]

---

1. Memorandum Opinion of February 19, 1988

 The court has for consideration the post-mandate motions for summary judgment filed by each of the three defendants in the above-entitled cause.

 On June 12, 1987, [818 F.2d 1537] by a two-to-one margin, a panel of the Eleventh Circuit concluded that the *Del Costello* six-months' limitation period as against a union is tolled while someone like plaintiff Hester, seeks relief through grievance procedures. The majority was somehow able to read Hester's mind and discern that "the date upon which Hester knew or should have known of the unions' final action" was August 6, 1984, the date upon which Hester received the IUOE's notification that his appeal had been denied. Since Judge Tjoflat wrote his dissent on the statute of limitations issue at 818 F.2d 1548–1556, other courts have clearly agreed with Judge Tjoflat's reasoning. Among the cases agreeing with Judge Tjoflat is *Bell v. National Railroad Passenger Corporation*, 651 F.Supp. 125, 127–28 (S.D.N.Y.1986), which held that the six-months' statute of limitations is not "tolled because of the need for plaintiff to exhaust administrative remedies"; and *Arriaga–Zayas v. International Ladies' Garment Workers Union*, 835 F.2d 11 (1st Cir.1987), in which the First Circuit as recently as December 10, 1987, held:

 > The [Supreme] Court ... has made it crystal clear that an employee whose interests have been slighted by his union can simultaneously tread both administrative and judicial paths.

 835 F.2d at 13 (citing *Vaca v. Sipes*, 386 U.S. 171, 185–86 [87 S.Ct. 903, 914–15, 17 L.Ed.2d 842] (1967)).

 Nevertheless, Judge Tjoflat's anticipation of the First Circuit fell on deaf ears among the members of his court, and the Law of this case and of the Eleventh Circuit is fixed, unless and until the Supreme Court decides to resolve the obvious conflict between the Courts of Appeals.

 On October 20, 1987, 830 F.2d 172, the Eleventh Circuit panel supplemented and clarified its opinion of June 2, 1987, speaking on an entirely different subject, namely, the extent of a federal court's jurisdiction over a union's duty of fair representation or fair treatment *internally*. In the extended opinion at 830 F.2d 174–176, the panel held that federal court review *is*

not available for all internal union decision-making, but rather is limited to claims that a union treated a member, or other person whom it is required to represent, in an arbitrary or discriminatory manner or in bad faith *in that representation.*

This court cannot help but be amused by West Publishing Company's syllabus at 830 F.2d 172, which announced that this court was "affirmed" at 818 F.2d 1537. Saying it, however, did not make it so. Making it clear that this court was only partially affirmed, the panel went on to point out that in this particular case it can find no conflict between the union's "required consent" provision and the "veteran's preference" provision in the collective bargaining agreement. Using this rationale, the Eleventh Circuit affirmed this court's finding in favor of the defendants as to the aspect of Hester's complaint based on an allegation of a breach of fiduciary obligation.

After receipt of the mandate, this court sought the advice of the parties as to which of Hester's claims remains viable. The court recognizes that an examination of the complaint itself, in juxtaposition to the Eleventh Circuit's opinion, is necessary in order to ascertain exactly which claim or claims are based on an allegation of unfair representation and therefore foreclosed by the mandate. Hester's Second Claim is certainly eliminated in its entirety by the Eleventh Circuit opinion, because all the Second Claim talks about is a breach of the duty of fair representation. But is this where the Eleventh Circuit intended to stop? Although defendants argue that the Eleventh Circuit meant also to knock out Hester's Third Claim, this court cannot find either the magic words "fair representation" or their equivalent in the Third Claim, and this court is therefore unwilling to accept defendants' wishful interpretation of the Eleventh Circuit opinion in this regard.

Although this court is not sure of everything that the Eleventh Circuit is either telling it to do or not to do, this court is reasonably sure of one thing, namely, that defendants are not entitled to summary judgment except as to any aspects of the complaint charging a union breach of the duty of fair representation. Unfortunately, this court was not privy to every argument presented to the Eleventh Circuit in defense of this court's granting of summary judgment in favor of defendants. This court can readily see, however, that appellees succeeded in defending this court's ruling only by convincing the Eleventh Circuit that this court was at least partially right for the wrong reasons, or for reasons which this court did not articulate. This being true, the Eleventh Circuit, with appellees' help, *might have chosen to discuss* each and all of the propositions contained in defendants' post-mandate motions for summary judgment. It did not. The mere fact that the Eleventh Circuit did not discuss defendants' present contentions does not mean that they were not implicitly considered by the Eleventh Circuit and rejected. In other words, this court finds that the law-of-the-case precludes a second granting of defendants' motions for summary judgment, unless and until

there is a new and different set of pertinent undisputed facts upon which a Rule 56 motion can be based. The only new evidentiary material submitted since the mandate was submitted by IUOE, namely, two versions of the IUOE constitution attached as Exhibits "A" and "B" to IUOE's new motion for summary judgment filed on February 1, 1988. This court can find nothing in these constitutions which presents new matters upon which to base an absolute defense, although IUOE and the local unions understandably try to take advantage of the encouraging comment by the Eleventh Circuit about the discipline and fine imposed on Hester, which is the subject of Hester's First Claim (the LMRDA claim). The Eleventh Circuit pointedly said that this union fine "was imposed for a violation of internal union rules—working in the jurisdiction of a local union without its consent," and that "Hester neither alleged nor produced any evidence to indicate that he attempted to comply with the union's procedures for obtaining such consent." This language seems to imply that the unions have an absolute defense in the event Hester did not attempt to obtain consent in accordance with internal union rules which would allow him to seek such consent, but neither the Eleventh Circuit nor the parties have enlightened this court sufficiently to know what ultimate bearing this may have on the outcome.

Applying *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Hester's failure to offer any evidence "to indicate that he attempted to comply with the union procedures for obtaining such consent" may be fatal, *if* he has the burden of proof on this subject. The Eleventh Circuit does not say whether this is a prerequisite which must be alleged and proven by Hester, or an affirmative defense which must be alleged and proven by defendants.

When the Second Claim disappears, Hester's First Claim and Third Claim may disappear, in which event the only course open to the court would be to follow Judge Tjoflat's direction and "revisit the question whether Hester's pendent state law claims should be dismissed or disposed of on the merits." 818 F.2d at 1556. This court was amused by West Publishing Company. It is bemused by the Eleventh Circuit. The *fact that the Second Claim no longer exists may* or may not impact adversely on the other claims. The nature and force of that impact, if any, will ultimately have to be addressed either on motion for directed verdict or by properly crafted instructions to the jury. It is difficult for this court to envision a viable Third Claim, which depends upon Hester's allegation that defendant Local 660 has "a duty not to operate its hiring hall in respect to supplying employees to TVA so as to violate the veteran's preference provision of the collective bargaining agreement," in light of the fact that the Eleventh Circuit could find no "facial conflict between the veteran's preference provision and the union's required consent provision," and could find "no inherent conflict between the union's constitution and the collective bargaining agreement." 830 F.2d at 175. If there is no inherent conflict between these provisions, and if union

If this court was correct either on February 19, 1988, or on June 27, 1990, or on both occasions, in interpreting the Eleventh Circuit, then there is no possibility of now breathing life into Hester's Second Claim.

The law-of-the-case is even more at play here than it was when this court evaluated the proposed Fifth Claim on June 27, 1990. *See Heathcoat v. Potts*, 905 F.2d 367 (11th Cir.1990), decided on July 9, 1990, after this court's opinion of June 27, 1990, for the Eleventh Circuit's most recent discussion of the law-of-the-case. When the Eleventh Circuit affirmed the dismissal of the Second Claim, that became the-law-of-the-case. Hester has reached the end of the line on that particular claim.

■ Of parenthetical interest is the Second Claim considered as if it had been originally written in the language of Hester's proposed Fifth Claim, which used what Hester describes as the "talismanic" terms "arbitrary" and "capricious" to characterize what his unions did or failed to do. This case, if ever tried, will be tried to a jury, upon the demand of Hester. And yet the Eleventh Circuit has clearly held, albeit, in another context:

> [T]he ultimate issue of whether a ... decision is *arbitrary* and *capricious* is a question of law to be determined by the court. Although subsidiary facts are properly for the factfinder, the ultimate issue is for the court.

*Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1578 (11th Cir.1989) (emphasis supplied).

This court was the trial court in *Greenbriar* and was then under the impression that the Seventh Amendment required for a *jury* to judge who wins any legitimate debate over whether particular conduct was "arbitrary" or "capricious," just as a *jury* routinely decides whether particular con-

duct was "negligent" or "wanton." If this court had known while trying *Greenbriar* that it was the *judge's* exclusive province to decide whether particular conduct was "arbitrary" or "capricious," this court would have disagreed with the Eleventh Circuit in advance and would have found as an "ultimate fact" that the zoning decision of Alabaster's City Council was "arbitrary" and "capricious." When, in the instant case, the Eleventh Circuit has strongly suggested, if not actually resolved, the "ultimate issue" under the Second Claim by saying that it finds nothing arbitrary or capricious to have been done by IUOE or by Local 660, the law-of-the-case takes on super meaning. If the Eleventh Circuit has not already made these into controlling findings against Hester, *Greenbriar* at least instructs this court to make the findings without a jury. The undisputed fact that the IUOE's constitution prohibits a member of one local from working in the jurisdiction of another without the consent of the second local means that the decision by Local 660 that the union constitution takes precedence over the veteran's preference was neither "arbitrary" nor "capricious" nor in "bad faith." When a question is legitimately debatable, its resolution one way or another cannot be "arbitrary" or "capricious." If the Eleventh Circuit said nothing else in *Hester I* and *Hester II*, it recognized that the difference of opinion between Hester and Local 660 was legitimately debatable. Apparently, so did TVA, because it went along with the union decision on the question and fired Hester.

Assuming *arguendo* that the slightest viability remains in the Second Claim, this court notes that the Eleventh Circuit properly avoided the serious question inherent in the Second Claim, namely, whether § 3 of the TVA Act even implies a cause of

---

decision-makers decided to resolve Hester's complaint without their decision being infected with invidious discrimination against him, or with bad faith, it is difficult to see how Hester can prevail on the merits of his LMRDA claim.

The court prefers, for the time being at least, to use tunnel vision and to interpret the mandate narrowly. However, the court will amend the pre-trial order to add the defenses inherent in the Eleventh Circuit's opinion and in defendants' new motions for summary judgment.

The Eleventh Circuit expressly avoided ruling on the question of whether or not plaintiff's Fourth Claim states a cause of action under Alabama law. In Judge Tjoflat's separate opinion on June 12, 1987, he said:

> On remand, the district court should revisit the question whether Hester's pendent state law claim should be dismissed or disposed of on the merits.

(emphasis in original).

action for breach of the duty of fair representation. *Hester v. Intern. Union of Operating Engineers*, 830 F.2d 172, 174 (11th Cir.1987). For the same reasons that the Eleventh Circuit did not address this issue, this court probably should not address it. Nevertheless, in the event the question should ever become relevant, this court's thinking on the general subject of private causes of action implied from statutes which proscribe certain conduct but do not expressly recognize a civil action by a private party based upon a violation of that statute is accurately reflected in Justice Scalia's concurrence in *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), where Justice Scalia said:

> In the 23 years since Justice Clark's opinion for the court in *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), we have *twice* narrowed the test for implying a private right, first in *Cort v. Ash, supra* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)], itself, and then again in *Touche Ross & Co. v. Redington, supra* [442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)], and *Transamerica Mortgage Advisors, Inc. v. Lewis, supra* [444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)]. *See also Cannon v. University of Chicago*, 441 U.S. 677, 730, 99 S.Ct. 1946, 1974–1975, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) and *California v. Sierra Club*, 451 U.S. 287, 301, 101 S.Ct. 1775, 1783, 68 L.Ed.2d 101 (1981) (REHNQUIST, J., joined by Burger, C.J., and Stewart and Power, JJ., concurring). The recent history of our holdings is one of repeated rejection of claims of an implied right. This has been true in nine of eleven recent private right of action cases heard by this Court, including the instant case. *See Touche Ross, supra; Transamerica, supra; Universities Research Assn., Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 91–94, 101 S.Ct. 1571, 1580–1582, 67 L.Ed.2d 750 (1981); *California v. Sierra Club, supra; Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639–640, 101 S.Ct. 2061, 2066–2067, 68 L.Ed.2d 500 (1981); *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–2625, 69 L.Ed.2d 435 (1981); *Daily Income Fund v. Fox*, 464 U.S. 523, 535–536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984); and *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145–148, 105 S.Ct. 3085, 3092–3094, 87 L.Ed.2d 96 (1985).

\* \* \* \* \* \*

As Justice POWELL observed in his dissent in *Cannon, supra*, 441 U.S., at 730–731, 99 S.Ct., at 1975;

> Under Art. III, Congress alone has the responsibility for determining the jurisdiction of the lower federal courts. As the Legislative Branch, Congress also should determine when private parties are to be given causes of action under legislation it adopts. As countless statutes demonstrate, including Titles of the Civil Rights Act of 1964, Congress recognizes that the creation of private actions is a legislative function and frequently exercises it. When Congress chooses not to provide a private civil remedy, federal courts should not assume the legislative role of creating such a remedy and thereby enlarge their jurisdiction. (footnote omitted).

It is, to be sure, not beyond imagination that in a particular case Congress may intend to create a private right of action, but choose to do so by implication. One must wonder, however, whether the good produced by a judicial rule that accommodates this remote possibility is outweighed by its adverse effects. An enactment by implication cannot realistically be regarded as the product of the difficult lawmaking process our Constitution has prescribed. Committee reports, floor speeches, and even colloquies between congressmen, *ante*, [108 S.Ct.] at 519, are frail substitute for bicameral vote upon the text of a law and its presentment to the President.

108 S.Ct. at 522, 523 (emphasis in original). Hester asked the Eleventh Circuit, and is now asking this court, to do what Justice Powell criticized, namely, to "assume the

legislative role of creating a remedy." If in enacting § 3 of the TVA Act Congress had intended to imply a cause of action for a union's breach of the duty of fair representation, it is peculiar that the only court which has recognized such an implied cause of action between the year 1933, when the TVA Act was adopted, and today is the Sixth Circuit. *See Bowman v. Tennessee Valley Authority*, 744 F.2d 1207 (6th Cir. 1984). Sixth Circuit precedent is not binding on this court, and *Bowman* certainly does not persuade this court. Even if it did, the opinion in *Bowman*, read and applied in its entirety, would eliminate Hester's Second Claim anyway because of the same fatal deficiencies which the Eleventh Circuit found in the allegations or facts upon which Hester's Second Claim is based.

Inasmuch as the Second Claim no longer existed after *Hester I* and *Hester II*, these secondary considerations have been redundant. The court will discontinue the unnecessary and will not consider the statute of limitations defense, or the exhaustion of remedies defense. In fact, it is a redundancy for the defendants even to have aimed their Rule 56 motions at the Second Claim. In final analysis, any issue surrounding the Second Claim issue was mooted by the opinions and mandate of the Eleventh Circuit.

### First Claim

When this court wrote its opinion of February 19, 1988 (footnote 1, *supra*), it did not have the benefit of *Hester III*, written after the two earlier opinions had been vacated by the Supreme Court. The third opinion of the Eleventh Circuit was a response to an order by the Supreme Court to reconsider the case in the light of *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). *See Hester v. Intern. Union of Operating Engineers*, 878 F.2d 1309 (11th Cir.1989). This court now has the latest word from the Eleventh Circuit. The only real question left as regards the First Claim is whether or not this final pronouncement by the Eleventh Circuit after February 19, 1988, provides any reason for taking a new look at the Rule 56 motion addressed to Hester's First Claim, which charges that the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5) (LMRDA), was violated by IUOE and Local 660 when they fined Hester, and by Local 320 when it refused to accept his dues, these acts allegedly constituting illegal disciplinary actions. In the opinion of February 19, 1988, this court expressed serious doubt about the continued viability of the First Claim in light of the Eleventh Circuit's criticism of Hester for having produced no evidence to indicate that he "made any attempt to comply with the procedures outlined in IUOE's constitution for obtaining the consent of a local to work in its jurisdiction." 830 F.2d at 174. In his most recent brief, Hester says "that he *did* attempt to obtain transfer into or a work permit from Local 660, something which the International's Decision affirming the fine said was a fact, *but the Eleventh Circuit said was a non-fact.*" Hester's brief, p. 14 (emphasis supplied). Is this court bound by what Hester admits the Eleventh Circuit pronounced *as a non-fact*? All three of the Eleventh Circuit's opinions presuppose the necessity of an exhaustion of applicable internal union procedures, although Judge Tjoflat's dissent would forgive any exhaustion requirement in favor of an obligation by Hester to go to court after he suffered injury. Hester has now offered some evidence to prove an attempt to obtain a work permit from Local 660. If the court does not apply the law-of-the-case, a dispute of fact exists over whether or not Hester made a bona fide effort to exhaust his internal union remedies. The exhaustion of viable union administrative remedies has long been a recognized prerequisite to court action under LMRDA when a union member charges official union misconduct. This concept is explained in *Hayes v. Brotherhood of Ry. and Airline Clerks*, 727 F.2d 1383, 1386 (5th Cir.1984), which outlines the Supreme Court jurisprudence on the subject. The gist of the rule, insofar as here applicable, is that Hester must either prove exhaustion or must prove a bona fide effort frustrated by union hostility of the type which would exempt him from fully pursuing internal union remedies.

The non-exhaustion defense when union *discipline* of a member is challenged is an entirely different matter from the non-exhaustion defense to a hybrid § 301 claim charging failure to fairly represent. As the Eleventh Circuit said in *Hester I:*

"Hybrid" section 301/fair representation claims place two major labor policies in *conflict* when internal grievance procedures are involved.

818 F.2d at 1547 (footnote omitted) (emphasis supplied).

Judge Tjoflat would resolve this "conflict" in favor of court action before exhaustion, and other courts agree with him. *See* footnote, *supra.* But Hester's First Claim is *not* a "hybrid" § 301 claim. The unions' non-exhaustion defense to the First Claim, which was not expressly ruled upon in any prior appeal, constitutes an absolute bar *only if the facts are as the unions contend.* The First Claim does not fail under Rule 56 consideration for the undisputed absence of any attempt by Hester to avail himself of an internal union procedural remedy (despite the Eleventh Circuit's off-the-cuff remark), because there is now legitimate dispute over the facts pertinent to this issue.

There is still a serious statute of limitations hurdle for Hester in his First Claim. Both in *Hester I* and in *Hester II* (818 F.2d 1537 and 830 F.2d 172), the Eleventh Circuit, in analyzing and denying an absolute bar by statute of limitations, discussed only its erroneously applied six-month statute of limitations as recognized in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The panel correctly said: "Although *Del Costello* recognized the possibility that a union member's claims might be tolled during the time he or she continues to seek relief through grievance procedures, the court [Supreme Court] did not expressly address the issue." 818 F.2d at 1544. The panel majority, consisting of Judges Kravitch and Tuttle, concluded that *Proudfoot v. Seafarer's International Union,* 779 F.2d 1558 (11th Cir.1986), triggers the statute of limitations in a "hybrid" § 301 suit on " 'the date on which the employee knew or should have known of the employer's final action, whichever occurs later.' " 818 F.2d at 1545. This court finds it hard to conceive, even theoretically, of how a person *"should have known"* a particular fact *later* than he "actually *knew"* that fact. Nevertheless, the Eleventh Circuit did correctly quote *Proudfoot.* This court thinks that the *Proudfoot* court must have meant to say "sooner" instead of "later." This court also finds it hard to conceive of how the *Proudfoot* reasoning can apply to a case which contains *no* "hybrid" § 301 claim. Hester never complains of his "employer's final action." If Hester were complaining of being terminated by TVA, that event took place more than a year before this suit was filed, and the action would clearly be barred under *Reed.* Proceeding upon the premises stated by the panel majority, Hester's statute of limitations applicable to the First Claim, if determined under *federal* statutes of limitations principles, ostensibly began to run when "Hester knew or should have known of the unions' final action," i.e., "where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." 818 F.2d at 1548. Judge Tjoflat dissented from this view, voicing the opinion that the statute of limitations against Local 660 and IUOE began to run no later than October 7, 1983, when Hester protested in writing about what Local 660 had done to him. Judge Tjoflat interpreted the majority to mean that the statute of limitations did not begin to run until August 6, 1984, when IUOE notified Hester that it had denied his appeal. A dissenter's critical interpretation of a majority opinion does not make that interpretation binding on the lower court, particularly where, as here, the majority unequivocally remanded *"for the district court to determine when Hester knew or should have known of the Union's 'final action,' i.e. the point where the grievance procedure was exhausted or otherwise broke down."* 878 F.2d at 1310 (emphasis supplied). If the majority had been able to pinpoint the accrual date of the one-year statute of limitations as Judge Tjoflat suggested it did, it surely would have proceeded to hold, one way or the other, whether the statute of limitations had acted as a bar to Hester's LMRDA

claim as a matter of law. Judge Tjoflat makes a good point when he says that "the majority does not state when Hester's cause of action against Local 320 accrued; presumably it accrued on September 5, 1984, when Local 320 suspended his membership pending payment of his fine to Local 660." 818 F.2d at 1553, 1554. This conclusion by Judge Tjoflat, as to Local 320, is academic, however, in light of the fact that Hester has gone limp in his suit against Local 320, his own local. This court would agree with Judge Tjoflat's dissent if it had the power to do so, but it is bound by the law-of-the-case to the viability of the First Claim, just as it is bound with respect to the non-viability of the Second Claim. What was law-of-the-case sauce for Hester is law-of-the-case sauce for his unions, that is, unless the Supreme Court succeeded somehow in substituting its implied instructions to this court for the Eleventh Circuit's express mandate.

▇ Hester argues with the mandate by saying that despite what the Eleventh Circuit says, this court can pinpoint the date when the statute of limitations began to run as being January 15, 1984.[2] If Hester is correct, why did the Eleventh Circuit send the matter back for jury resolution on the statute of limitations question? Hester cannot be correct unless he can convince a jury.

▇ This necessarily leads to a discussion of what the Supreme Court really intended by vacating the Eleventh Circuit's

opinions in *Hester I* and *Hester II* at 818 F.2d 1557 and 830 F.2d 172. It would have helped if the Supreme Court had supplemented its order of vacation by referring not only to *Reed* but to *Hardin v. Straub,* 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). In *Hardin,* a unanimous Supreme Court held that limitation periods applying to federal causes which contain no congressionally-mandated statute of limitations not only require the borrowing of an appropriate state statute of limitations but are controlled *in all respects* by the state's limitations scheme, *including the state's concepts of "accrual" and "tolling."* In *Hardin,* the Supreme Court said:

> Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *Id.,* [*Burnett v. Grattan,* 468 U.S. 42] at 49, 104 S.Ct. [2924] at 2929 [82 L.Ed.2d 36 (1984)]; *Chardon v. Fumero Soto,* 462 U.S. 650, 655–656, 103 S.Ct. 2611, 2615–2616, 77 L.Ed.2d 74 (1983); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). This tradition of borrowing analogous limitations statutes, cf. *O'Sullivan v. Felix,* 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914), is based on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action."

---

**2.** *Even were the Court to decide that the statute of limitations on plaintiff's claims against Local 660 began running before the Board issued its ruling on plaintiff's appeal, Local 660's assertion that the statute began running on October 7, 1983 is both disingenuous and clearly erroneous. First of all, the Union's own constitution, through 29 U.S.C. § 411(a)(4), prohibited Hester from instituting suit on that date and for some time thereafter. Pursuant to 29 U.S.C. § 411(a)(4), a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal and administrative proceedings against such organizations or any officer thereof." Article XVII, § 4, of the International's Constitution expressly requires that union members pursue "internal remedies for a period not exceeding four (4) months" before instituting legal action against the union, and provides for penalties to be im-*

posed on any member violating that provision. Here, even if one measures that four month period from September 15, 1983, to the date on which the Union mailed its very first letter to Hester regarding his alleged misconduct, Hester was prohibited by the Union Constitution from instituting suit until January 15, 1984. It would be utterly illogical to hold that the statute of limitations began running prior to that time. It cannot be said that he knew, or should have known, that the "grievance procedure" *prima facie* he had a statutory and union obligation to follow had "broken down" before it began. The defendants have submitted no affidavits that their internal "grievance procedure" was a patent farce, or known by Hester to be rigged or futile. Without some such showing, the statute had not begun to run until Hester found out that the International's decision went against him.
Hester's Brief, pp. 17, 18.

*Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985). *"In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application."* *Johnson, supra,* 421 U.S. [at] 464, 95 S.Ct., at 1722. Courts thus should not unravel state limitations rules unless their *full* application would defeat the goals of the federal statute at issue.

109 S.Ct. at 2000 (emphasis supplied) (footnote omitted).

In *Hester III,* the Eleventh Circuit never mentioned *Hardin,* probably because the panel was unaware of it, and again the panel split. Judges Kravitch and Tuttle agreed, quite naturally, with *Reed* that the applicable Alabama statute of limitations was Alabama's one-year personal injury statute. But they continued to apply *Proudfoot's federal* concept of *accrual,* i.e., "when Hester knew or should have known of the union's final action." Judge Tjoflat, consistent with his prior opinion, wrote a short dissent in which he would find Hester barred as against Local 660 as a matter of law under Alabama's one-year statute of limitations. Nevertheless, the mandate of the Eleventh Circuit, coming from the panel majority, was and still is:

> [We] remand for the district court to determine when Hester knew or should have known of the Unions' 'final action,' i.e. the point where the grievance procedure was exhausted or otherwise broke down.

878 F.2d at 1310.

This court does note that the mandate conspicuously uses the singular word "Union," whereas there are three separate union entities involved. This court is not sure whether the panel majority intends that there be a single triggering date for the running of the statute as to all three defendants, or recognizes the possibility of different triggering dates for different defendants. If Alabama's accrual scheme were employed, as the Supreme Court requires in *Hardin,* it would be a relatively simple matter to decide this case, because *Hardin* wipes out *Proudfoot,* and under Alabama's accrual scheme there is no delay in accrual,

the date of *injury* being the accrual date unless the defendant is proven guilty of some *affirmative* act of deceit which hides the fact of injury from the plaintiff. Applying *Hardin,* Hester would be barred. Thus, if this court were so bold as to follow the law of the Supreme Court instead of the clear mandate of the Eleventh Circuit, no discussion about when the grievance machinery broke down or was exhausted would be required. This court, however, is not so bold, having learned to follow mandates of the Eleventh Circuit, which in this case expressly calls for the jury to determine when Hester knew or should have known that his grievance could proceed no further, and then to determine if that date is more than a year prior to the filing of Hester's complaint.

Because Judges Kravitch and Tuttle did not quarrel with Judge Tjoflat on the accrual date as against Local 320, this court will go along with Judge Tjoflat on that date as a matter of law for what it is worth. After all, Local 320 was not directly involved in processing the internal grievance, and its rights can hardly be affected by what the other two unions did or did not do. Also, this treatment of Local 320 is consistent with the fact that Hester does not make any claim against Local 320 even in his Second Claim and has basically permitted Local 320 to be a nominal party. It is also consistent with the mandate's use of the singular word "Union," which this court construes as intending to leave out Local 320.

Although this court is unable to reconcile the Supreme Court's *Hardin* with the Eleventh Circuit's *Proudfoot,* the court follows the mandate and will overrule IUOE's and Local 660's Rule 56 motions as to Hester's First Claim. The case will proceed to trial to see if Hester can prove (1) that the fines imposed were improper and violated LMRDA's safeguards provided by 29 U.S.C. § 411(a)(5), and (2) that the claim is not barred by the one-year statute of limitations.

### Fourth Claim

In the opinion of February 19, 1988 (footnote 1, *supra* ), this court acknowledged

Judge Tjoflat's admonition that on remand it must decide whether or not Hester's Fourth Claim, the pendent state claim, will survive Rule 12 and/or Rule 56 scrutiny. Hester now argues that the law-of-the-case establishes that his Fourth Claim states a claim. In view of Judge Tjoflat's suggestion, not gainsaid by the panel majority, this court not only finds that the law-of-the-case does not control the viability of the Fourth Claim but that, as a matter of law, the Fourth Claim is barred by Alabama's one-year statute of limitations. § 6–2–39(a)(5) (Ala.Code 1975).

The Fourth Claim took its final form by amendment filed on February 29, 1988. It charges the unions with a bad faith violation of plaintiff's inalienable rights under the union constitution and thus under the law of Alabama by the imposition of illegal discipline. It is based primarily, if not entirely, on Hester's interpretation of *Local No. 4 of Nat. Organization Masters, etc. v. Brown,* 258 Ala. 18, 61 So.2d 93 (1952), which stands for the narrow proposition that in Alabama a union member can seek to enjoin his union from fraudulently resorting to devious practices for the purpose of circumventing and frustrating clear and unambiguous provisions of a collective bargaining agreement without the member's first exhausting remedies available within the union.

IUOE and Local 660 persuasively argue that *Local No. 4* should be limited to its facts and is not applicable to Hester's fact situation. This may well have been Judge Tjoflat's thought. In *Local No. 4,* the union members filed a bill in *equity.* Plaintiffs there were necessarily representing to the equity court that they lacked an adequate remedy at law. They did not demand a jury. Here, to the contrary, Hester affirmatively asserts a remedy at law, ostensibly *adequate.* He seeks compensatory and punitive damages and demands a jury. This court is not at all confident that *Local No. 4* can be construed as a recognition by the Supreme Court of Alabama of such a cause of action as is purportedly stated in the Fourth Claim.

 Hester argues alternatively that a private cause of action is implied from § 25–7–12 (Ala.Code 1975), which forbids a union from charging a fee as a condition for work. First, this court has previously joined Justice Scalia's reluctance to do what legislatures could do but do not do. Second, there is a difference between "dues," a "fine," and a "fee," particularly under the undisputed facts of this case. This court finds no private Alabama tort for Hester under § 25–7–12.

 Only assuming *arguendo* that Hester's Fourth Claim states a cause of action cognizable under the law of Alabama, is it preempted by federal labor law? Defendants argue that it is. Hester counters that his pendent state claim, which the court allowed Hester to add over defendants' objection at the pre-trial conference on August 26, 1985, is not preempted because 29 U.S.C. §§ 413 and 523(a), provisions of LMRDA, expressly provide that union members retain their state remedies. Alternatively, Hester argues if the doctrine of preemption would otherwise apply, his claim survives because the collective bargaining agreement between his union and TVA is not governed by LMRDA. It is difficult to conceive of Hester's being permitted to *invoke LMRDA* in one claim and to argue that *LMRDA doesn't apply* in another. Nevertheless, Hester's second argument is the better argument, because ordinarily if a state claim is any way dependent on or related to the collective bargaining agreement, it is preempted. *United Steelworkers of America v. Rawson,* —— U.S. ——, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). In *Rawson,* union members charged, *inter alia,* the commission of a state tort by a union for its alleged failure to conduct safety inspections properly and in compliance with the requirements of the collective bargaining agreement. 110 S.Ct. at 1907. The Supreme Court found the question preempted. Hester's case is close kin to Rawson's proposed tort claim for alleged negligent failure to properly conduct a safety inspection. Similar decisions have recently been rendered by other courts. *See Hanks v. General Motors Corp.,* 906 F.2d 341 (8th Cir.1990); and *Raptopolous v. WS, Inc.,* 738 F.Supp. 394 (D.Or.1990), both of which recognize the *Rawson* principle that a tort claim is

preempted by § 301 *unless it is entirely independent of the collective bargaining agreement.* There is no doubt here that Hester's purported state law claim implicates and involves the collective bargaining agreement. There is no avoiding the intertwining of the question of the conflicting geographic jurisdictions of the two local unions with the respective rights of Hester and of TVA under the veterans preference provision contained in the collective bargaining agreement.

■ Only assuming *arguendo* that Alabama recognizes a cause of action like that stated in the Fourth Claim, and further assuming *arguendo* that such a state claim is not preempted by federal labor law, does the court reach the clearly dispositive question of the applicable statute of limitations. If Alabama has a cause of action like that outlined in the Fourth Claim, is it *ex contractu* or *ex delicto?* It cannot be both. Because the Supreme Court in *Local No. 4* was dealing with a situation where union "officers were *wrongfully* and *fraudulently* resorting to devious practices" (61 So.2d 97) (emphasis supplied), this court must conclude that any such cause of action, if it exists, is necessarily a tort action and thus governed by § 6–2–39(a)(5) (Ala.Code 1975), which says:

The following must be commenced within one year:

5) Actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section.

Although any duty by the unions owing to Hester may have arisen out of a quasi-contractual relationship, Hester's charge of bad faith is stated in classical terms of tort, just as a bad faith refusal to pay insurance benefits is routinely stated. Furthermore, Hester's demand for compensation for emotional distress and punitive damages proves conclusively that he is not suing for breach of contract. The Alabama tort of bad faith refusal to pay insurance benefits is controlled by the tort statute of limitations and not by the longer limitations period for breach of contract. *Alfa Mut. Ins. Co. v. Smith,* 540 So.2d 691 (Ala.1988). The one-year statute of limitations here began to run from the time the cause of action accrued; and Hester's cause of action accrued as soon as Hester was entitled to maintain it. *Payne v. Alabama Cemetery Ass'n, Inc.,* 413 So.2d 1067 (Ala.1982). There is no intervening or overriding federal "accrual" or "tolling" concept applicable to a pure state tort claim, so *Reed* has no application. *Local No. 4* on its face proves that Hester could have brought his alleged state claim without first exhausting his internal union remedies, and therefore he had no excuse not to have filed it within a year after the discipline was imposed. He is barred.

### Third Claim

■ In its opinion of February 19, 1988, this court said: "It is difficult to envision any viable Third Claim." Now this court's doubt has ripened into the realization that the Third Claim is not viable.

The Third Claim is directed only at Local 660. Hester argues that the law-of-the-case precludes any present Rule 56 attack on his Third Claim, which alleges a breach by Local 660 of the collective bargaining agreement by the operation of its hiring hall, contrary to the agreement's veterans preference provision. This court disagrees with Hester and finds no application of the law-of-the-case to the Third Claim, that is, unless the principle is to be applied *against* Hester because of the close kinship between Hester's Third Claim and his Second Claim, already precluded by the law-of-the-case. If the law-of-the-case has any application, the Eleventh Circuit in *Hester I,* in a pronouncement from which it did not retreat in *Hester II* or in *Hester III,* said that it sees no conflict between the "required consent" provision of the union constitution and the "veterans preference" of the collective bargaining agreement. If this pronouncement is correct, Hester can hardly complain of a violation of the collective bargaining agreement by the unions' enforcement of their constitutional provision for required consent. Thus, the law-of-the-case arguably precludes Hester's Third Claim if it precludes anything. *See Heathcoat v. Potts, supra.*

With the court's oral permission, Local 660 argues as a defense to the Third Claim

its contention that TVA is an indispensable party defendant to the Third Claim. With this idea, the court agrees. Rule 19, F.R. Civ.P., requires that parties be joined where their interest in the outcome is truly substantial. It is impossible to argue that TVA does not have a substantial interest. Its collective bargaining agreement is the primary subject of the Third Claim. Hester has made no attempt either to join TVA or to prove that its joinder is not feasible. TVA has such a crucial interest in the main issue presented by the Third Claim that this interest cannot be adequately protected without its being made a party. If TVA's acquiescence in the unions' decision against Hester represents TVA's thinking on the meaning of the agreement in juxtaposition to the intra-union constitution, this court can understand why Hester did not, and does not, make TVA a party. Nevertheless, a party to a contract still has a right to participate in a case which significantly involves the interpretation and future application of its contract. Thus far, TVA has not been afforded that opportunity.

Hester now offers some evidence that he made an attempt to exhaust the internal union procedures in order to overturn his discipline, but for aught appearing Hester *never attempted to invoke the grievance machinery provided in the collective bargaining agreement* for the purpose of retaining his job at TVA. These are two entirely separate administrative procedures. The appropriate route for enforcing a collective bargaining agreement is the filing of a grievance with the employer, with or without the assistance of the bargaining agent. Hester had a lawyer. Whether he sought help from Local 320 in filing a grievance is notably not mentioned. Instead of complaining to TVA about his firing, Hester complained to the unions about his discipline. The contract upon which he relies was between the unions and TVA. If the contract was breached, it was breached more by TVA than by Local 660. After all, it was TVA that terminated Hester. The fact that Local 660 did not represent Hester to his satisfaction was the subject of Hester's Second Claim, a claim which has previously been adjudicated

against Hester. The exhaustion of the grievance machinery contained in the collective bargaining agreement was a prerequisite to any suit for breach of that agreement. This is basic labor law. Hester has not demonstrated that he grieved his termination or that to process such a grievance would have been futile. This court can only guess what TVA's response would have been.

For these separate and several reasons, Local 660's Rule 56 motion will be granted as to the Third Claim.

### Hester's Possible Claim for Lost Medical Benefits

Although not clearly set forth in his complaint, it appears that Hester is claiming from these defendants as one element of his damages medical benefits Hester allegedly lost by virtue of the alleged union misconduct. Because the Employee Retirement Income Security Act (ERISA) preempts all such claims under the statutes or theories invoked in these four claims, and relegates an ERISA plan beneficiary exclusively to his ERISA remedies, defendants' motions for summary judgment will be granted to the extent of eliminating any such claim, without prejudice to such a claim being properly brought under ERISA against the appropriate ERISA fiduciary or plan administrator. *See Amos v. Blue Cross–Blue Shield of Ala.*, 868 F.2d 430 (11th Cir.1989).

### Conclusion

An appropriate, separate order will be entered.