61 So.2d 93

**LOCAL NO. 4 OF NATIONAL ORGANIZATION MASTERS, MATES & PILOTS OF AMERICA v. BROWN et al.**

1 Div. 486.

Supreme Court of Alabama.

Oct. 23, 1952.

V. R. Jansen, Mobile, for appellant.

Johnston, McCall & Johnston and Inge, Twitty, Armbrecht & Jackson, all of Mobile, for appellees.

**STAKELY, Justice.**

The complainants in this case, George F. Brown, Royce C. Graham, Emanuel Patronas, Jr. and Samuel C. Wanson, are each licensed deck officers of ocean going cargo and passenger vessels, the licenses being issued by the Department of Commerce of the United States. They are also members of Local No. 4, National Organization Masters, Mates and Pilots of America, and ·when they became members of this organization, an unincorporated association, they signed an application agreeing to comply with the constitution and by-laws of the organization, copies of which were furnished each of them. Local No. 4 of the National Organization Masters, Mates and Pilots of America is a labor union of masters, mates and pilots and is a subsidiary association of the National Organization Masters, Mates and Pilots of America. The national organization is a corporation but is a nonresident of the State of Alabama and has not qualified to do business in the State of Alabama. The national organization on October 1, 1948 made a written labor agreement on behalf of itself and its local unions and their members with the Waterman Steamship Corporation. This agreement included the following provisions of Section 1 thereof.

"(a) Recognition — The Company recognizes the organization as the sole representative of its licensed deck officers including Masters, for the purpose of collective bargaining.

"(b) Preference of Employment— In hiring licensed deck officers (as described in section (a) above), preference of employment to fill vacancies shall be given to members of the Organization, when available, provided that in the opinion of the Company they are qualified to fill such vacancies. Subject to the foregoing, the Company shall have the unrestricted right to select its own employees.

"(d) During the term of this agreement neither party shall take any action or institute, make any changes in, or put into effect any employment regulations, shipping rules, or procedures that will in any way modify the purpose and understanding of this agreement."

In January, February and March of 1949 the Waterman Steamship Corporation from time to time called the complainants to board its vessels then in the Port of Mobile and to serve thereon as night mates. Night mates are licensed deck officers and relieve for the night the ship officers who have brought the vessel into port. They are in command of the vessel.

The president of Local No. 4 went aboard the vessels and showed to complainants then serving as night mates certain port rules adopted by the local association containing provisions as follows:

"1. All members unemployed, desiring to be placed on the Shipping and Night Mates list, must register with the Local, giving their Address, Card Number, Local Number and date dues are paid to.

"2. All members must clear through the Local on all Assignments.

"3. Any member who solicits or accepts a position on any vessel without having a clearance from the Organization and does not comply with the established rules and regulations of the Organization, shall after disregarding the rules, be fined the sum of fifty ($50.00) dollars.

"6. All members registering shall be placed on the shipping and night mates list in the order of registering."

The president of the local association threatened complainants with fine and punishment and suspension unless they quit the vessel, registered at the union hall and submitted to rotary employment. The president of Local No. 4 threatened each of the complainants in substantially the same manner. The complainants were brought before the local association and were told they were being tried for breaking the Port Rules. They were each found guilty and sentenced to a fine of $50 and suspended for thirty days, the 30 day suspension being thereafter suspended. Local No. 4 notified the Waterman Steamship Corporation that complainants were no longer in good standing and no longer on the eligible list and that the Waterman Steamship Corporation was under duty to refuse them employment.

It appears to be undisputed that under the labor agreement made between the Waterman Steamship Corporation and the National Organization which has been referred to, the Waterman Ship Corporation had the unrestricted right to determine and select its own masters and mates to operate and handle its ships from the national and local associations. In the past the Waterman Steamship Corporation had selected and employed them without being required to clear their hiring and employment through the local association and further the national organization and the Waterman Steamship Corporation had uniformly interpreted the contract as giving the Waterman Steamship Corporation the unrestricted right to so hire and select such masters and mates to serve upon its ships. Nor was the right disputed by the local association at the Port of Mobile until it had taken the action through its president as aforesaid.

The unrestricted right of employment clause had been in the contract with the Waterman Steamship Corporation and the National Union since 1936 and since that time it had been the uniform practice that the Waterman Steamship Corporation could hire the employees as long as they had paid their dues and were in good standing and that all Waterman Steamship Corporation had to do was to call the man and send him to the ship.

When the complainants were threatened with fine and suspension as hereinabove set forth, they filed the present bill in equity asking for a temporary injunction restraining Local No. 4 and E. W. Higginbotham and the other officers, employees, agents and attorneys of said association from interfering with or molesting the contractural rights existing between complainants as members of the local association and the parent organization and the Waterman Steamship Corporation, from enforcing or threatening to enforce the aforesaid port rules, from suspending complainants from their membership in good standing with the local association, from collecting fines and taking punitive action against them because of their performing the contract made in their behalf according to its tenor and effect. The bill further prays for a decree declaring and determining the rights of complainants under their contract of employment and declaring that the Waterman Steamship Corporation has the unrestricted right under the aforesaid contract to hire and select them as masters and mates upon its ships and that they as members have the right to accept and enter upon such employment without clearing their hiring and selection through the local association. The bill further prays for such other and further relief as the complainants might be entitled to in the premises. The temporary injunction was granted by the court. Demurrer to the bill was overruled. A motion to dissolve the injunc-

tion was overruled and upon a final hearing of the cause, the injunction was made permanent in a final decree. The appeal here is from the final decree.

■ It seems to us that the paramount question involved in this case is whether the rights of the parties are governed by the contract entered into on October 1, 1948, by and between the National Organization Masters, Mates and Pilots of America and the Waterman Steamship Corporation or whether, the complainants being members of Local No. 4, a subsidiary of the parent organization, the port rules adopted by the local association are controlling. It appears to be undisputed that under this contract the Waterman Steamship Corporation has the unrestricted right to select its own masters and mates to serve upon its own ships and so the question arises as to whether this unrestricted right can be circumvented by the port rules adopted by the local association. We think it is obviously contradictory to say that the parties by their contract accorded to Waterman Steamship Corporation the unrestricted right to select and hire its employees from the members of the union and at the same time to deny the reciprocal rights to the employees to accept the employment when tendered them. In other words, it does not appear to us to be reasonable to say that the Waterman Steamship Corporation has the unrestricted right of employment to which we have referred and then that this unrestricted right can be circumvented on the theory that its employees who are members of the union can be restrained by rules adopted by the union to accept employment. The contract made by the parent organization for itself and its subsidiary unions and the members thereof with the Waterman Steamship Corporation appears to be the guide by which the rights of the parties are to be governed and by which this case should be determined. This is exactly what the trial court held to be the situation.

In reaching the conclusion to which we have referred, a number of propositions must be considered and we treat them as follows.

I. The National Organization Masters, Mates & Pilots of America, the parent organization, to which reference has been made, is a foreign corporation and is not qualified to do business in the State of Alabama. It was not made a party to the bill and it is insisted that the court was in error in overruling the demurrer to the bill based on this ground. Equity Rule 29, Code 1940, Tit. 7, Appendix, reads as follows:

"In all cases where it shall appear to the court that persons, who might otherwise be deemed necessary or proper parties to the suit, reside out of the jurisdiction of the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases, the decree shall be without prejudice to the rights of the absent parties in that they may claim their shares of any funds in court, or if paid out by order of court, may recover their shares from parties to whom such funds may have been so paid."

■ We consider it clear that the court in its discretion had the right to proceed in the case at bar without the parent organization being made a party. Turnipseed v. Blan, 226 Ala. 549, 148 So. 116. It appears from the bill that there is no justiciable controversy or dispute between the parent organization and complainants or between the parent organization and the Waterman Steamship Corporation. Under the allegations of the bill, the parent organization and Waterman Steamship Corporation are in complete accord in the interpretation of the contract. In other words, the fact that the parent organization is not before the court could not prevent those for whose benefit the contract was made from obtaining relief against others wrongfully violating or interfering with the rights of complainants under the contract. Under the allegations of the bill we do not see how the rights of the parent organization will be prejudiced by the decree of the court. The present bill presents a situation different from that presented in Court of County Revenues v. Richardson, 252

Ala: 403, 41 So.2d 749. In that case the court was dealing with the security of the bondholders and, therefore, held that the bondholders should be made parties to the bill because the rights of the bondholders might be prejudiced by the decree. Here, as pointed out, there is no dispute as to the interpretation of the contract so far as the parent organization is concerned. There is therefore no reason why the court should refuse to grant relief to the complainants under the circumstances shown by the bill just because the parent organization is not made a party to the bill.

■■ II. It is ordinarily true that the members of a voluntary organization must exhaust their remedies within the organization before applying to the courts for relief. Medical & Surgical Society of Montgomery County v. Weatherly, 75 Ala. 248; Costa v. LaLuna Servante. 255 Ala. 6, 49 So.2d 672. It is argued that the complainants had no right to file the present bill until they had exhausted their remedies within the organization by appeal to the National Executive Committee at Washington, D. C., and in the event the appeals were there denied to the Convention of the parent organization which meets biennially, the next meeting of which would not be held until May, 1951, in the City of New Orleans, La. But there are various situations in which the general principle to which we have referred is not applicable. These exceptions are well stated in the decision in Local Union No. 57, etc., v. Boyd, 245 Ala. 227, 16 So.2d 705, and need not be restated here. It is sufficient to say that it is alleged in the bill and found from the evidence by the court that the local association and its officers were wrongfully and fraudulently resorting to devious practices to circumvent and frustrate the clear and unambiguous provisions of the contract made between the parent organization and the Waterman Steamship Corporation. In the foregoing case this court held that in order to insist on exhaustion of the remedies within the organization, the organization must act in good faith and must not violate the laws of the land or any inalienable right of the members. The lower court held that Local No. 4 was not acting in good faith through its officers in attempting to control the selection of employees on the ships of the Waterman Steamship Corporation through the port rules to which we have referred. In the foregoing case it was pointed out that the complainant had involved a valuable right, namely, the right of every individual to accept and retain employment without malicious interference by third persons and that this right will be protected if necessary by injunctive processes. See also Grand International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 98 So. 569; Shaup v. Grand International Brotherhood of Locomotive Engineers, 223 Ala. 202, 135 So. 327; Carter v. Knapp Motor Co., 243 Ala. 600, 11 So.2d 383, 144 A.L.R. 1177.

■ III. It is further clear to us that under the allegations of the bill and the proof in the case a court of law could not afford an adequate remedy to the complainants. According to the finding of the court, the respondents were wrongfully and fraudulently interfering with the rights of the complainants to carry on their lawful business and were threatening to try them and fine them and to enforce rotary employment upon them. It is obvious that they would suffer considerable damage, be put to great expense, inconvenience and loss of time in trying to secure their rights on appeal. The appellate tribunal to which an appeal would lie was in Washington, D. C. The highest tribunal meets only once in two years and the next meeting was more than a year away in a city outside of Alabama. It seems to us clear that the complainants were entitled to seek their remedy in a court of equity by injunction. Carter v. Knapp, Motor Co., supra; Bowen v. Morris, 219 Ala. 689, 123 So. 222; Local Union No. 57, etc., v. Boyd, supra.

We consider that the decree of the court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.