941 F.2d 1574
 138 L.R.R.M. (BNA) 2719, 120 Lab.Cas. P 10,978,
20 Fed.R.Serv.3d 986
 Edward C. HESTER, Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO an
unincorporated association; Local 660, International Union
of Operating Engineers; Local 320, International Union of
Operating Engineers, AFL-CIO, an unincorporated association,
Defendants-Appellees.
 No. 90-7571.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 20, 1991.
 
 C.V. Stelzenmuller, Dent M. Morton, Burr and Forman, Birmingham, Ala., for plaintiff-appellant.
 Thomas N. Crawford, Jr., Samuel H. Heldman, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for defendant-appellee Local 660, International Union of Operating Engineers.
 James T. Langford, Jacobs and Langford, Atlanga, Ga., for defendant-appellee International Union of Operating Engineers.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before FAY and DUBINA, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 This is the fourth time this court has had the pleasure of considering this case, which has yet to go to trial. Plaintiff Edward Hester filed suit in November of 1984 against the International Union of Operating Engineers ("IUOE") and two of its locals, Local 660 and Local 320, alleging that the discipline imposed on him by the unions was improper in several respects. In this appeal, Hester challenges the district court's grant of summary judgment on two of his claims, partial summary judgment on his claim for lost medical benefits, and the denial of his motion for leave to amend his complaint. For the reasons that follow, we AFFIRM the grants of summary judgment as to the Third and Fourth Claims, and the denial of leave to amend the complaint, but VACATE the partial summary judgment as to Hester's claim for medical benefits under the First Claim.
 
 BACKGROUND
 
 2
 This case has a long and complex history. In summary, Hester, a crane operator and member of IUOE Local 320, was hired by the Tennessee Valley Authority ("TVA") for a position within the jurisdiction of IUOE Local 660. Although Local 660 had referred a non-veteran to the TVA for that position, the TVA hired Hester, a veteran, pursuant to the collective-bargaining agreement which provided that the TVA would give a preference in hiring decisions to veterans over non-veterans.[1] However, Hester did not first obtain the consent of IUOE Local 660, as required by the IUOE constitution.[2] As a result, Local 660 initiated disciplinary proceedings against Hester. After a Local 660 trial, the union fined Hester $3,000. Hester appealed the fine to the IUOE, which denied the appeal but reduced the fine to $500. Local 320 then notified Hester that until he paid the $500 fine, the IUOE constitution prevented it from accepting his membership dues. During this time, and allegedly because of this discipline, Hester lost his job with the TVA.
 
 
 3
 Hester filed this action in the district court on November 7, 1984. His initial complaint listed three counts: (1) the fine imposed by Local 660 and the IUOE, and Local 320's refusal to accept his dues until he paid that fine, were disciplinary actions imposed without the safeguards required by the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5); (2) IUOE breached its duty of fair representation under section 3 of the TVA Act, 16 U.S.C. § 831b, by affirming the fine against Hester; and (3) Local 660 violated the TVA Act by not honoring the veterans' preference provision in the collective-bargaining agreement. On September 5, 1985, the district court allowed Hester to amend his complaint to add a fourth count--a pendent state law claim against Local 660 and the IUOE.
 
 
 4
 The unions each filed motions for summary judgment, asserting that Hester's causes of action were barred by the six-month statute of limitations found in 29 U.S.C. § 160(b). The district court granted the motions, but on the basis that the court had no subject matter jurisdiction because the TVA was not subject to the LMRDA, and that the TVA Act did not include a duty of fair representation. The court also dismissed the pendent state law claim. Hester appealed to this court.
 
 
 5
 In Hester v. International Union of Operating Engineers, 818 F.2d 1537 (11th Cir.1987) (Hester I ) (Tjoflat, Kravitch, Circuit Judges, and Tuttle, Senior Circuit Judge), a panel of this court held that the court does have subject matter jurisdiction over these claims. This court, citing DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and Proudfoot v. Seafarer's International Union, 779 F.2d 1558 (11th Cir.1986), also held that while the applicable statute of limitations is the six-month period in 29 U.S.C. § 160(b), it is tolled while the employee pursues internal union remedies, and begins to run only from the time of final action by the union. The district court's order was reversed and the case was remanded for further proceedings.
 
 
 6
 Then on October 20, 1987, this court issued Hester v. International Union of Operating Engineers, 830 F.2d 172 (11th Cir.1987) (Hester II ), on petition by the IUOE for rehearing by the panel. In Hester II, this court amended its prior opinion by going on to address whether the Second Claim of Hester's complaint, breach of the duty of fair representation, stated a cause of action. This court held that the claim failed to state a cause of action because "Hester has not alleged sufficient facts to establish that the IUOE's challenged conduct was arbitrary, discriminatory, or in bad faith," id. at 175, but expressly declined to reach the question of whether "the TVA Act implies a cause of action for breach of a union's duty of fair representation." Id. at 174. Accordingly, this court affirmed on other grounds the district court's dismissal of the Second Claim of Hester's complaint.
 
 
 7
 The United States Supreme Court then granted certiorari, vacated this court's prior decision in this case, and remanded the case to this court for reconsideration in light of its recent decision in Reed v. United Transportation Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1988). International Union of Operating Engineers v. Hester, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989). In Reed, the Supreme Court held that claims arising out of the LMRDA "bill of rights" are governed by state statutes of limitation. Accordingly, in Hester v. International Union of Operating Engineers, 878 F.2d 1309 (11th Cir.1989) (Hester III ), cert. denied, --- U.S. ----, 110 S.Ct. 1808, 108 L.Ed.2d 939 (1990), this court applied Alabama's residual personal injury one-year statute of limitations, Ala.Code § 6-2-39(a)(5) (repealed 1985), because Hester's claim arose before January 9, 1985. However, because Reed did not address when that statute of limitations begins to run, this court adhered to the view that the statute of limitations began to run at the time of final union action, and remanded "for the district court to determine when Hester knew or should have known of the Union's 'final action,' i.e. the point where the grievance procedure was exhausted or otherwise broken down." Hester III, 878 F.2d at 1310. Those parts of the prior opinions not affected by Reed were reaffirmed.
 
 
 8
 On remand, the defendants renewed their motions for summary judgment. The district court denied these motions on February 19, 1988. Then on December 5, 1989, Hester moved to amend his complaint to add a Fifth Claim, which essentially reworded his Second Claim. The district court denied Hester leave to amend, stating that the motion was untimely and inappropriate because the Second Claim was dismissed as of Hester II. Hester v. International Union of Operating Engineers, 742 F.Supp. 1517 (N.D.Ala.1990). Defendants then again moved for summary judgment. This time, in a memorandum opinion dated August 10, 1990, the district court granted summary judgment on the Third and Fourth Claims, denied summary judgment on the First Claim, but granted partial summary judgment preventing Hester from claiming any loss of medical benefits as damages. Hester v. International Union of Operating Engineers, 742 F.Supp. 1522 (N.D.Ala.1990). This latest appeal followed.
 
 DISCUSSION
 
 9
 In this appeal, Hester challenges the district court's actions on remand. We will discuss each in turn.
 
 Amendment of Complaint
 
 10
 Hester argues that the district court abused its discretion by denying his motion for leave to amend his complaint to add a Fifth Claim. Because we find this motion was untimely filed, we affirm the district court's denial of the motion for leave to amend.
 
 
 11
 The determination of whether to grant leave to amend the complaint after responsive pleadings have been filed is within the sound discretion of the trial court. Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 406 (11th Cir.1989). The rules of civil procedure restrict that discretion, however, by directing that leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a); Shipner, 868 F.2d at 407. Thus, in the absence of any apparent reason, leave to amend should be granted. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Shipner, 868 F.2d at 407.
 
 
 12
 In this case, Hester's proposed Fifth Claim was essentially an attempt to resurrect the Second Claim--breach of the duty of fair representation under section 3 of the TVA Act--by attempting to address this court's concerns from Hester II. In Hester II, decided October 20, 1987, this court found that Hester's complaint was insufficient to show a cause of action for breach of the duty of fair representation.[3] 830 F.2d at 175. However, Hester did not file his motion for leave to amend until December 13, 1989 (amended May 9, 1990), over two years after Hester II. Although for a portion of this time proceedings in this case were stayed for disposition in the United States Supreme Court, Hester did not file his motion for leave to amend until four and a half months after this court's decision in Hester III (July 31, 1989), reaffirming this court's disposition of the Second Claim. Clearly, Hester had ample opportunities to amend his complaint after first being put on notice by Hester II of the deficiencies in his fair representation claim, but inexplicably waited a very long time to do so.[4] Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1490 (11th Cir.1989) (citations omitted), rev'd on other grounds, --- U.S. ----, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), undue delay may clearly support such denial. Foman, 371 U.S. at 182, 83 S.Ct. at 230. Given the long history of this case, and the opportunities for Hester to attempt to cure the deficiencies in the complaint, Hester's proposed amendment was clearly untimely; the district court did not abuse its discretion by refusing to allow it.[5] See Shipner, 868 F.2d at 407 ("The district court did not abuse its discretion in denying Shipner's motion to amend the complaint and supplement the record at a time when it had granted summary judgment, but had not entered final judgment."). Accordingly, we affirm the district court's denial of the motion to amend.
 
 Third Claim
 
 13
 Hester also challenges the district court's grant of summary judgment for defendant Local 660 on Hester's Third Claim--breach of the collective bargaining agreement. The district court granted summary judgment on the basis that TVA was an indispensable party because its collective bargaining agreement is the subject of this claim, and because "Hester never attempted to invoke the grievance machinery provided in the collective bargaining agreement for the purpose of retaining his job at TVA." 742 F.Supp. at 1534 (emphasis in original). Although we reject the district court's rationale, we affirm the grant of summary judgment on the Third Claim.
 
 
 14
 First, we do not agree that TVA is an indispensable party under Federal Rule of Civil Procedure 19.[6] This is essentially a breach of contract claim for the union's alleged breach of Hester's right, as a third-party beneficiary, to veteran's preference in employment under the collective bargaining agreement. Hester does not allege any breach of the agreement by TVA; indeed, the TVA complied with the agreement by hiring Hester, a veteran. Hester's complaint is only with the union, and it appears that complete relief could be accorded among those already parties without the presence of the TVA.
 
 
 15
 We also disagree that Hester was required to exhaust the collective bargaining agreement grievance procedure in order to maintain this claim. As the collective bargaining agreement provides only for grievances against the employer, it would have been impossible for Hester to resolve the matters addressed in the Third Claim--breach of the collective bargaining agreement by the union--through the contractual grievance procedure.
 
 
 16
 However, we agree with appellee Local 660 that Hester's Third Claim fails on the merits. We find support in the Supreme Court's decision in United Steelworkers of America v. Rawson, --- U.S. ----, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Rawson involved a third-party beneficiary claim of breach of a collective bargaining agreement under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Although the TVA is not subject to the LMRA,[7] Rawson is nonetheless instructive as Hester is making essentially the same argument under section 3 of the TVA Act, 16 U.S.C. § 831b (1982),[8] and the basic principles enunciated in Rawson appear equally applicable to this case.
 
 
 17
 Rawson makes clear that a third-party contract claim against a union for breach of a collective bargaining agreement is much more difficult to prove than a fair representation claim. Indeed, only in rare cases will an individual successfully be able to bring such a contract claim against a union. The Court stated:
 
 
 18
 [W]e also think it necessary to emphasize caution, lest the courts be precipitate in their efforts to find unions contractually bound to employees by collective-bargaining agreements. The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees.
 
 
 19
 Id. --- U.S. at ----, 110 S.Ct. at 1912 (citations omitted; emphasis added). Applying "traditional principles of contract interpretation," id. --- U.S. at ----, 110 S.Ct. at 1912, the Court further stated that "third-party beneficiaries generally have no greater rights in a contract than does the promisee. For the respondents to have an enforceable right as third-party beneficiaries against the Union, at the very least the employer must have an enforceable right as promisee." Id. In other words, the provisions in the collective bargaining agreement relied on by the employee must be "promises by the Union to the employer." Id.
 
 
 20
 In this case, the contract provision which Hester claims was breached is as follows:
 
 
 21
 Applicants who meet the qualification requirements of a position are considered as follows for appointment. Applicants with status of veteran with a compensable disability of 10 percent or more incurred in military service are appointed first in the order of their qualifications. The remaining applicants considered for appointment are divided into three groups: outstanding, well-qualified, and qualified.... Within a qualifications group, applicants with veterans' preference are appointed before those without such preference.
 
 
 22
 We find nothing in this provision to suggest it creates a right directly enforceable by individual employees against the union. Nor does it appear to be a promise by Local 660; it obligates the TVA to give veterans preference in hiring but does not obligate the union to refrain from interfering in TVA hiring decisions or even to recommend a veteran from its hiring hall. If the TVA failed to give a veteran preference in hiring as the contract provides, the union member arguably would have an action against the TVA. However, the union cannot breach this provision, as it contains no obligation on the part of the union. We therefore affirm the grant of summary judgment on this claim for the defendant-appellee Local 660.[9]
 
 Fourth Claim
 
 23
 Hester also raises a claim under Alabama law based on Local No. 4 of National Organization Masters v. Brown, 258 Ala. 18, 61 So.2d 93 (1952), and Alabama Code § 25-7-12 (1975). Because we find that this claim is preempted by federal law, we affirm the grant of summary judgment.
 
 
 24
 Initially, we disagree with the district court that Local No. 4 does not support this claim. In that case, employees of a steamship company and members of Local No. 4 of the National Organization of Masters, Mates and Pilots of America, challenged the imposition of a fine on them for accepting work from the Waterman Steamship Corporation without first obtaining the local union's consent as provided in the local association rules. The basis of the suit was a collective bargaining agreement between the national union and the steamship company which stated that a preference in employment would be given union members, but that otherwise the company would " 'have the unrestricted right to select its own employees.' " Local No. 4, 258 Ala. at 20, 61 So.2d at 94. The Supreme Court of Alabama found that the rights of the parties in this case were governed by the agreement, and, construing the agreement, held that the employees were wrongfully disciplined, as "it does not appear ... to be reasonable to say that the Waterman Steamship Corporation has the unrestricted right of employment to which we have referred and then that this unrestricted right can be circumvented on the theory that its employees who are members of the union can be restrained by rules adopted by the union to accept employment." Id. at 23, 61 So.2d at 96. This appears to parallel the facts and claims made by Hester in the instant case.[10]
 
 
 25
 However, as Hester's Fourth Claim is based on a breach of the collective bargaining agreement, it is essentially the same as Hester's Third Claim, under section 3 of the TVA Act, 16 U.S.C. § 831b. The TVA Act provides in pertinent part:
 
 
 26
 The board [of directors of the TVA] shall without regard to the provisions of Civil Service laws applicable to officers and employees of the United States, appoint such managers, assistant managers, officers, employees, attorneys, and agents, as are necessary for the transaction of its business, fix their compensation, define their duties, and provide a system of organization to fix responsibility and promote efficiency.
 
 
 27
 16 U.S.C. § 831b. Pursuant to this legislative authority, the TVA has elected to appoint its employees by means of collective bargaining agreements, such as the one at issue in this case. See also Bowman v. Tennessee Valley Auth., 744 F.2d 1207 (6th Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Tennessee Valley Trades & Labor Council v. Tennessee Valley Auth., 488 F.Supp. 146 (E.D.Tenn.1980), appeal dismissed, 672 F.2d 918 (6th Cir.1981).
 
 
 28
 Although the TVA Act itself contains no express language of preemption of this area, we believe that all state claims involving such collective bargaining agreements with the TVA are preempted by federal law.[11]
 
 
 29
 Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred because: (1) the scheme of the federal law is so pervasive that the reasonable inference is that Congress left no room for the states to supplement it; (2) the field in which the federal law touches is one where the federal interest is so dominant that it will be assumed to preclude the enforcement of state laws on the same subject; or (3) the object that is sought to be obtained by the federal law and the character of the obligations imposed by it reveal a strong federal purpose.
 
 
 30
 Tectonics, Inc. v. Castle Const. Co., 753 F.2d 957, 961 (11th Cir.) (citations omitted), cert. denied, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985). Given the extensive federal regulation of labor-management relations, collective bargaining agreements in particular, and the fact that the TVA is a United States government corporation, existing solely by virtue of federal law, we find that Congress has manifested an intention to supersede state law in this area.
 
 
 31
 Once again, the basic principles underlying Supreme Court caselaw on section 301 of the LMRA provide guidance. The Supreme Court has held that "any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301" of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). Rawson, --- U.S. at ----, 110 S.Ct. at 1911 (citation omitted); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). In Lucas Flour, the Court outlined the philosophy behind federal preemption of suits involving collective bargaining agreements:
 
 
 32
 The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.
 
 
 33
 369 U.S. at 103, 82 S.Ct. at 577. The Court expanded on this concept in Allis-Chalmers stating that
 
 
 34
 [t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.
 
 
 35
 471 U.S. at 211, 105 S.Ct. at 1911. We find these principles no less applicable to disputes based on labor contracts between unions and the TVA. Indeed, any other conclusion would produce the absurd result that while federal law governs actions involving collective bargaining agreements of private sector employers, state law governs actions involving such agreements by a federal corporate employer, even though the latter obviously impacts more directly on federal interests.
 
 
 36
 Accordingly, we find that Hester's Fourth Claim is preempted by federal law, and affirm the grant of summary judgment.
 
 Medical Benefits
 
 37
 Lastly, Hester challenges the district court's grant of partial summary judgment, eliminating any claim for medical benefits in Hester's First Claim--wrongful discipline under the LMRDA--the only claim remaining in the district court for disposition. The district court found that any claim for lost medical benefits must be brought under section 514 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144. We disagree.
 
 
 38
 It is clear that ERISA preempts state laws. 29 U.S.C. § 1144(a); Amos v. Blue Cross-Blue Shield, 868 F.2d 430 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989). However, 29 U.S.C. § 1144(d) expressly provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." In this case, as Hester seeks recovery for lost medical benefits under the LMRDA, 29 U.S.C. §§ 411(a)(5), 412, not state law, his claim is not preempted by ERISA.
 
 
 39
 In his First Claim, Hester argues that the fine imposed by Local 660 and affirmed (but reduced) by the IUOE, and Local 320's refusal to accept his dues until that fine was paid, were disciplinary actions taken without the safeguards provided by the LMRDA, a kind of due process clause for union disciplinary actions.[12]
 
 
 40
 Hester's claim for lost medical benefits is for expenses incurred for his wife's cancer operation, which occurred during the time he was unemployed following his termination by the TVA, and not covered by any health benefit plan. Hester alleges that his termination from employment at TVA was the proximate result of his improper discipline by the unions, and that had he not been fired, he would have been covered by an employee health benefit plan. The LMRDA's remedial provision, 29 U.S.C. § 412 provides in pertinent part: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." (Emphasis added.) Given this broad authority for recovery of damages, and the remedial purpose of the Act, see International Bhd. of Boilermakers v. Braswell, 388 F.2d 193 (5th Cir.), cert. denied, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968),[13] we cannot say as a matter of law that the type of damages sought by Hester are not "appropriate" under this Act.[14] We therefore reverse the district court's grant of partial summary judgment on Hester's claim for lost medical benefits.
 
 CONCLUSION
 
 41
 For the foregoing reasons, we AFFIRM the district court's denial of leave to amend the complaint to add a Fifth Claim, AFFIRM the district court's grant of summary judgment on Hester's Third and Fourth Claims, but REVERSE the grant of partial summary judgment as to lost medical benefits. We REMAND this case for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The applicable provision in the agreement states:
 Applicants who meet the qualification requirements of a position are considered as follows for appointment. Applicants with status of veteran with a compensable disability of 10 percent or more incurred in military service are appointed first in the order of their qualifications. The remaining applicants considered for appointment are divided into three groups: outstanding, well-qualified, and qualified. Applicants in the "outstanding" group are appointed first, then applicants in the "well-qualified" group, then in the "qualified" group. Within a qualifications group, applicants with veterans' preference are appointed before those without such preference. Among those with veterans' preference, applicants who have status as noncompensable disabled veterans' [sic] are appointed first. Membership in a union affiliated with the Council is a positive factor of merit and efficiency which is considered in determining relative qualifications for appointment.
 
 
 [2]
 The IUOE constitution provides that "[m]embers of one Local Union shall not seek employment, be employed, or remain at work at the craft within the territorial jurisdiction of another Local Union without consent of such other Local Union...."
 
 
 [3]
 This court stated that "Hester has not alleged sufficient facts to establish that IUOE's challenged conduct was arbitrary, discriminatory, or in bad faith," a requirement for a valid claim for breach of the duty of fair representation. Hester II, 830 F.2d at 175. We disagree with the district court that this court held that Hester could never bring a valid claim for breach of the duty of fair representation; rather, it merely held that to this point the facts alleged by Hester were insufficient to support such a claim
 
 
 [4]
 During the course of this case, the district court also attempted to exercise judicial control by entering a schedule order and a pre-trial order pursuant to Fed.R.Civ.P. 16. If nothing else, these orders should have put Hester on notice that any effort to amend his complaint needed to be made promptly
 
 
 [5]
 Hester argues that he should have been allowed to amend his complaint because of Breininger v. Sheet Metal Workers Int'l Assoc. Local No. 6, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), decided December 5, 1989. We agree with the district court, however, that to the extent Breininger can be read as relevant to this claim, it is not inconsistent with this court's prior rulings in this case. In Breininger, the Court held that the National Labor Relations Board ("N.L.R.B.") does not have exclusive jurisdiction over fair representation claims, and also construed certain language in the LMRDA. This court, in Hester II, did not rule that Hester's Second Claim was invalid because the N.L.R.B. had exclusive jurisdiction; indeed, this court expressly declined to rule on whether a fair representation claim could be brought under the TVA Act. Nor is the LMRDA involved in Hester's Second Claim. Breininger simply cannot justify Hester's delay in filing his motion for leave to amend his complaint
 Moreover, because we find Hester's motion was untimely, we do not reach the question of whether Hester's proposed Fifth Claim was sufficient to state a valid cause of action under the TVA Act.
 
 
 [6]
 Fed.R.Civ.P. 19(a) provides in pertinent part:
 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
 If a party meets the description in Rule 19(a)(1)-(2) and cannot be made a party, the court must determine if they are indispensable to the action, considering
 first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 Fed.R.Civ.P. 19(b).
 
 
 [7]
 The definitions section of the LMRA excludes from the definition of an "employer" who comes under the Act "the United States or any wholly owned Government corporation." 29 U.S.C. § 152. The TVA, as a wholly owned United States government corporation, is therefore exempt from the provisions of the LMRA
 
 
 [8]
 Section 3 of the TVA Act, 16 U.S.C. § 831b, provides authorization for the TVA to "appoint such managers, assistant managers, officers, employees, attorneys, and agents, as are necessary for the transaction of its business, fix their compensation, define their duties, and provide a system of organization to fix responsibility and promote efficiency."
 
 
 [9]
 Hester argues that this court's reversal of the district court's grant of summary judgment in its prior decisions necessarily included a determination by this court that there were no possible grounds for the granting of summary judgment, and that determination is now binding as the law of the case. Appellant misperceives the doctrine of the law of the case. Under this doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." Dorsey v. Continental Casualty Co., 730 F.2d 675, 678 (11th Cir.1984); see also Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir.1990). However, "[t]he doctrine does not extend to every issue that could be ever raised in a given litigation but rather is limited to those issues previously decided," Heathcoat, 905 F.2d at 370, i.e., only to "issues decided expressly or by necessary implication." Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir.1985), cert. denied, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). Notwithstanding the law of the case doctrine, a district court on remand "is free to address, as a matter of first impression, those issues not disposed of on appeal." Id. at 1119 (citations omitted); see also Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506, 1511 n. 3 (11th Cir.1987) ("The district court may address issues not disposed of on appeal."), cert. denied, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988)
 In Hester I (reaffirmed in Hester III ) this court concluded that the district court erred in holding that it had no subject matter jurisdiction over Hester's claims. From this narrow holding, Hester argues that this court impliedly found that there was no basis for summary judgment in favor of defendants in this case, under any source of law, even those not raised by any party to this case. Hester's argument would impose on a court of appeals the necessity of considering many arguments not yet considered by the district court, or even argued or briefed to the appellate court, and would expand the doctrine of law of the case far beyond its roots in the values of "efficiency, finality, and obedience within the judicial system." Litman, 825 F.2d at 1511.
 
 
 [10]
 Because we find that Local No. 4 could provide the basis for a claim under Alabama in this case, if it were not preempted by federal law, we decline to address whether Hester might also otherwise have a claim under the Ala.Code § 25-7-12 (1975), a criminal statute prohibiting labor organizations from charging a fee for the right to work
 
 
 [11]
 The supremacy clause provides Congress with the power to preempt state law. U.S. Const. art. VI, cl. 2
 
 
 [12]
 29 U.S.C. § 411(a)(5) provides:
 No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 
 
 [13]
 Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc)
 
 
 [14]
 Of course, when this case finally comes to trial, Hester will still bear the burden of proving his claim for these damages; we essay no opinion on the merits of this claim